[Cite as *Brammer v. Brammer*, 2013-Ohio-2843.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

VANCE BRAMMER,

    PLAINTIFF-APPELLANT,         CASE NO. 9-12-57

    v.

SHANNON BRAMMER,         O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Family Court
Trial Court No. 06 DR 0119

**Judgment Affirmed**

**Date of Decision:   July 1, 2013**

APPEARANCES:

    *Ted Coulter*  for Appellant

    *Kevin P. Collins*  for Appellee

**WILLAMOWSKI, J**.

{¶1} Plaintiff–Appellant, Vance Brammer ("Vance" or "Father"), appeals the judgment of the Marion County Court of Common Pleas, Family Division, terminating the parties' shared parenting plan and naming Defendant-Appellee, Shannon Brammer, nka Rappe ("Shannon" or "Mother") as the residential parent of the parties' two sons. On appeal, Father contends that the trial court erred when it found that there was a change of circumstances warranting the termination of the shared parenting plan and when it named Mother as the residential parent. Father also claims the trial court erred in its admission of certain evidentiary exhibits and in its reliance upon the family service investigator's report. For the reasons set forth below, the judgment is affirmed.

{¶2} The parties were married on August 28, 1998, and had two children together: Hayden, born in October 2000, and Keegan, born in June 2003. They divorced in 2006, and the parties entered into a mutually developed shared-parenting plan. The parties lived in close proximity to each other and the plan called for them to exercise equal parenting time. Pursuant to the shared-parenting plan, each parent was designated the residential and custodial parent of the children during their individual periods of parenting time. The shared-parenting plan also specified that the children attend school in the River Valley School

District in Marion County, Ohio, unless the parties agreed to change school districts by mutual consent.

{¶3} In January of 2010, Shannon filed a motion to modify the parties' shared parenting plan because she had received a promotion and intended to relocate to Tennessee, where her fiancé resided.[1] She requested that she be named the residential parent for school purposes, and the children would reside with Vance in Ohio during the summer. Vance opposed this modification and he also filed a motion to modify, asserting that it was in the best interests of the children to remain in Ohio. Both parents wished to be named their children's residential parent for school purposes, and each parent expressed significant concerns with having the children reside with the other for the school year.

{¶4} Shannon believed that the Tennessee schools would be better able to deal with the special educational needs of their younger son, who had been diagnosed with Tourette's syndrome, ADHD. She also believed that she was more qualified to handle this son's medical needs, since she was a registered nurse. Vance worried that moving the children to Tennessee would cause their father-son relationships to suffer. There was also considerable evidence that the children were doing well in Ohio and were very close to many family and friends who lived nearby. The family services coordinator assigned to the case recommended

---

[1] Shannon later married her fiancé, Mark Rappe, in 2011.

that it was in the children's best interest to remain in Marion and to designate Vance as the children's residential parent for school purposes.

{¶5} The trial court granted Mother's motion and named her the residential parent for the school year. Vance appealed and requested a stay of the trial court's judgment pending the appeal. His motion for a stay was denied and the children resided with Mother and attended school in Tennessee during the August 2010-May 2011 school year.

{¶6} On May 31, 2011, this Court reversed the trial court's decision. *See Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610 (3d Dist.) (hereinafter, "*Brammer I*"). We found that "the majority of the evidence * * * support[ed] keeping the children in Marion and naming Vance the residential parent for school purposes." *Id.* at ¶ 54. "[T]here was no evidence presented, aside from Shannon's mere conjectures, to substantiate that the school in Tennessee would better serve her children than the school in Marion." *Id*. at ¶ 26. We further stated that "we cannot find evidence in the record that supports uprooting the children from an environment where they are surrounded by family and friends simply to place them in a new state where the only people known to them are their mother, her fiancé, and his children, with whom they have had only intermittent contact during the past two years." *Id.* at ¶ 60. Although a court of appeals must defer to a trial court's discretion in determining these issues, we held

that the trial court's decision was an abuse of discretion because the determination was not supported by a substantial amount of competent, credible evidence. *Id.* at ¶ 61.

**{¶7}** Upon remand, the trial court rendered a new judgment entry, modifying the shared parenting plan and naming Vance the residential parent for school purposes pursuant to this Court's decision in *Brammer I*. Shannon was ordered to release custody of the children to Vance on August 20, 2011, so that the children could return to Ohio for the 2011-2012 school year.

**{¶8}** Shortly after this Court's decision in *Brammer I*, Shannon filed a motion to modify parental rights and responsibilities, alleging that there had been a change in circumstances. She later filed an amended motion to modify parental rights and responsibilities and to terminate the shared parenting plan, pursuant to R.C. 3109.04(E)(2)(c), on November 14, 2011. Vance filed motions in opposition.[2]

**{¶9}** A three-day hearing was held on April 4 and 5, 2012, and June 5, 2012. The trial court heard testimony from: Shannon and Vance; Jennifer Yanka, the Family Services Coordinator ("Ms. Yanka" or "the FSC"); Shannon's new husband (stepfather); Vance's girlfriend; Vance's brother; a psychiatrist and psychologist who have worked with the children; an intervention specialist from

---

[2] Numerous other motions were filed by both parties throughout these proceedings. However, we shall limit our discussion of the procedural history of this case to the motions and trial court rulings that are directly relevant to the issues before us on appeal.

the Marion schools; a principal from Heritage School in the River Valley School District; a principal from Benjamin Harris School in the Marion School District; three of the children's teachers (from 3rd grade and 5th grade); and a special education expert witness. More than one hundred exhibits were admitted into evidence, including the children's school records, numerous emails between the parties, depositions, and the FSC's report.

{¶10} After hearing all of the evidence, the trial court found that there had been a significant breakdown in communications between the parties, and that this was a change in circumstances that had resulted in an adverse impact on the children. Specifically, the trial court stated that:

> [C]ommunication has become ineffective and often times vitriolic. Evidence shows that the children have become the messengers of information that should be relayed between the parties. The evidence also shows that the children no longer have the benefit of both parents making decisions about their education and healthcare. The children have been adversely impacted as a result.

(Sept. 12, 2012 J.E., p. 10) The trial court then found that it was in the children's best interest that the shared parenting decree be terminated and that "the harm likely to be caused by the maintenances of the shared parenting plan is outweighed by the termination of the shared parenting decree to the children." (*Id.*)

{¶11} The trial court proceeded to analyze the factors with respect to the best interests of the children set forth in R.C. 3109.04(F)(1) in order to allocate parental rights and responsibilities. After considering all of the relevant factors,

the trial court designated Shannon as the residential parent and legal custodian of the children and Vance was to have parenting time during most of the summer break and during other designated school breaks and holidays.

{¶12} It is from this judgment that Vance now appeals, raising the following four assignments of error for our review.

### First Assignment of Error

**The trial court erred as a matter of law, abused its discretion and erred against the weight of the evidence by admitting and relying on the family service investigator's erroneous/prejudicial report as substantive facts and determinative reasons to change custody rather than weigh all factual evidence and testimony.**

### Second Assignment of Error

**The trial court erred as a matter of law, abused its discretion and erred against the weight of the evidence by determining that there was a substantiated and sufficient change in circumstances pursuant to Ohio Revised Code 3109.04(E)(1)(A).**

### Third Assignment of Error

**The trial court erred as a matter of law, abused its discretion and erred against the weight of the evidence by determining that terminating the prior decree and naming [Shannon] as the custodial parent was in and necessary to serve the best interest of the children [*sic*] pursuant to ORC 3109.04(E)(1)(A), ORC 3109.04(E)(2)(C), ORC 3109.04(F)(1), and ORC 3109.04(F)(2) when failing to substantiate through findings the requisite threshold in ORC 3109.04(E)(1)(A)(iii).**

**Fourth Assignment of Error**

**The trial court erred in admitting [Shannon's] Exhibits 41-46, letters between counsel, and erred in not admitting [Vance's] Exhibits 109 and 110, compilations of texts between the parties.**

*Standard of Review*

{¶13} Custody issues are some of the most difficult decisions a trial judge must make. Therefore, those decisions rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A court's decision regarding an award of custody is subject to reversal only upon a showing of an abuse of that discretion. *Id.*; *Trickey v. Trickey*, 158 Ohio St. 9, 13–14 (1952). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–Ohio–278, ¶ 17–18 (2d Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 11. "A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Pater v. Pater*, 63 Ohio St.3d 393 (1992).

{¶14} The reason for this standard of review is that the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony. *Davis*, 77 Ohio St.3d at 418. This is especially

true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Id*. at 419.

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *

(Citations omitted.) *Miller*, 37 Ohio St.3d at 74.

{¶15} In applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. *Hay v. Shafer*, 3d Dist. No. 10–10–10, 2010–Ohio-4811, ¶ 14, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, (1989). When reviewing a change of child custody proceedings, an appellate court should be guided by the presumption that trial court's findings were correct. *Miller* at 74.

*First Assignment of Error – Reliance on FSC's Report*

{¶16} In his first assignment of error, Vance contends that the FSC erroneously acted as a guardian ad litem ("GAL") when she did not meet the Marion Family Courts requirements to be a GAL, and that she failed to follow the applicable rules of court and guidelines pursuant to Loc.R22 and Sup.R.48 (pertaining to GALs). Vance argues that the trial court "prejudicially relied on the flawed reports" of the FSC rather than weighing all of the evidence and testimony.

(Appellant's Br. 18) He further finds fault in the manner in which the FSC conducted her investigation and with the facts she reported and the conclusions that she derived.

**{¶17}** This Court has previously held that it is permissible for a trial court to rely on an investigator's assessments and recommendations so long as the report contains sufficient facts from which the trial court can draw a proper conclusion and the trial court does not rely exclusively on the report in reaching its conclusion. *Brammer v. Meachem*, 3d Dist. No. 9–10–43, 2011-Ohio-519, ¶ 39; *Martin v. Martin*, 3d Dist. No. 9–03–47, 2004–Ohio–807, ¶¶ 15–20. A family court has the authority to hire an investigator, such as Ms. Yanka, pursuant to R.C. 3109.04(C) and the family court's local rules. R.C. 3109.04(C) provides in relevant part:

> **Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report. * * ***

**{¶18}** Local Rule 18 closely follows the language of the statute and states as follows:

**18.01 The Court, pursuant to Ohio Revised Code Section 3109.04(C), may appoint Family Court Services, upon its own Motion or the Motion of a party, in order to complete an investigation.**

**18.02 An investigation may be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and request the Court to order the parents and their minor children to submit to medical, psychological, and psychiatric examinations.**

**18.02 The report of the investigation and examination shall be made available to either parent and/or counsel of record not less than seven (7) days before trial. The report may be available at the settlement conference or final pre-trial provided that a final hearing has already been scheduled. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report.**

\* \* \*

*Meachem* at ¶¶ 16-17.

{¶19} The Marion County Family Court requires a person to be a licensed attorney in order to function as a GAL. *See* Loc.R. 22. Ms. Yanka is a certified GAL, but she is not a licensed attorney. Therefore, she is employed by the family court as a FSC, and she performed her investigation on this case in that capacity.

{¶20} Vance suggests that Ms. Yanka either was unqualified or she misunderstood her role. However, Ms. Yanka testified she had been employed by the Family Services Department of the Family Court for two years; she performed custody evaluations, participated in Early Neutral Evaluations, and mediated

custody disputes; she has a Bachelor's Degree in Social Work and a Master's Degree in Community Counseling; she is a Licensed Social Worker and a Licensed Professional Counselor; and, she is certified by the Ohio Supreme Court as a Guardian ad Litem. (Tr. 385-388)

{¶21} Vance bases most of his arguments on a single comment Ms. Yanka made when she was asked how long she had been a guardian ad litem. She responded that she had been a guardian ad litem for two years. (Tr. 392) Then she was asked if she had been appointed as a guardian ad litem on this case, and she replied that "I was." (*Id.*) It is unclear if her comment was merely a misstatement, or if she was referring to the fact that her role in this case was similar to what it would be if she was acting as a guardian ad litem in another court system, or if she was inadvertently using the terms "guardian ad litem" and "family services counselor/investigator" interchangeably. However, there was no indication or evidence in the record that either Ms. Yanka or the trial court misunderstood or misrepresented her role in this case, or that she had acted improperly or outside of the limitations set forth in the statutes and local rules for a FSC. She was not under any obligation to follow the rules for a GAL because they were not applicable to her in her capacity in this case.

{¶22} Vance also contends that Ms. Yanka's report should be stricken from the record. Again, we find no support for that assertion, either under the law or in

the record. As stated above, it is permissible for a trial court to rely on an investigator's assessments and recommendations so long as the report contains sufficient facts from which the trial court can draw a proper conclusion and a trial court does not rely exclusively on the report in reaching its conclusion. *Martin, supra; Meacham, supra.* Here, the facts in Ms. Yanka's report were carefully documented, and the trial court also considered the testimony of thirteen additional witnesses and countless other exhibits. Furthermore, even if Ms. Yanka's report had not been admitted, she testified extensively as to her investigation and all of her factual findings during the hearing. Therefore, all of the information contained in the report was also before the trial court via Ms. Yanka's testimony.

{¶23} Vance also finds fault with many of the facts and conclusions contained in Ms. Yanka's report and her testimony, and he complains that the trial court erred in relying upon Ms. Yanka's report and recommendation rather than weighing "all of the evidence and credible testimony." (Appellant's Br. 18) While it is true that the family court referenced some of Ms. Yanka's findings in the final judgment entry, there is no indication that the trial court relied exclusively upon these factors. The trial court heard testimony from numerous witnesses over three days. It was not necessary for the trial court to specify every single factor and witness that contributed to its final decision. Ms. Yanka was subject to vigorous cross-examination concerning her methodology and her

findings. Vance's attorney questioned Ms. Yanka concerning all of the issues now being raised. We will not second-guess the trial court's conclusions concerning the bias and credibility of the various witnesses' testimony or the relative weight to be given to the evidence. *See Meacham* at ¶ 44. Essentially, Vance is attempting to discredit the FSC's findings and recommendations because they were not favorable concerning him and his role as a parent.

{¶24} Ms. Yanka understood her authority and duties under the Local Rule and the statutes. Her investigation and report satisfied the requirements of both. Vance offered no supporting evidence for his opinion that the investigation lacked objectivity or that the trial court improperly relied solely upon Ms. Yanka's testimony and report without thoroughly considering all of the evidence before it.

{¶25} Therefore, we find no merit in Vance's arguments that Ms. Yanka's report, her testimony, and the manner in which she performed her duties as a FSC, were in any way deficient or improper. Vance's first assignment of error is overruled.

*Second Assignment of Error – Change of Circumstances*

{¶26} In the second assignment of error, Vance submits that the trial court failed to substantiate through accurate findings that there was a sufficient change in circumstances necessary to satisfy the threshold requirement set forth in R.C. 3109.04(E)(1)(a) before a trial court may modify parental rights and

responsibilities. He asserts that the evidence offered by Shannon of a lack of communication between the parties did not accurately portray the state of the parties' relationship and that any alleged breakdown in cooperation preceded the trial court's determined time-line threshold for a change in circumstances. Furthermore, Vance contends that there was a lack of evidence to show that any changed conditions had a continuing and materially adverse effect upon the children.

**{¶27}** Shannon's response posits that the requirements for terminating a shared parenting agreement are set forth in R.C. 3109.04(E)(2)(c), *not* R.C. 3109.04(E)(1)(a), and that this section of the Revised Code does not necessitate proof of a change of circumstances. However, even if (E)(1)(a) is utilized, Shannon points to a considerable amount of evidence in the record that supports the trial court's finding that there was a significant change in circumstance and that the breakdown in communications was detrimental to the children and made continuation of the shared parenting plan unworkable.

**{¶28}** In its judgment entry, the trial court noted that some appellate courts have ruled that a trial court need only to find that it is in the best interest of the child in order to terminate a shared parenting order when a motion is filed pursuant to R.C. 3109.04(E)(2)(c) to terminate a shared parenting arrangement. *See, e.g., Kougher v. Kougher*, 194 Ohio App.3d 703, 2011-Ohio-3411 (7th Dist.);

*Beismann v. Beismann*, 2d Dist. No. 22323, 2008-Ohio-984, ¶ 8. Yet, in other instances, courts have required a finding of a change of circumstances as a threshold requirement. *See, e.g., In re Luke Illig*, 3d Dist. No. 13-08-26, 2009-Ohio-916. *But see, Logan v. Holcomb*, 3d Dist. No. 9-12-61, 2013-Ohio-204. The trial court chose to apply Section (E)(1)(a), requiring a finding of a change of circumstances, and analyzed the facts accordingly. The trial court also determined that the "benchmark dates" for determining whether a change has occurred would be between the date of this Court's appellate decision, May 31, 2011, and the final hearing date of June 5, 2012. (J.E. p. 2)

{¶29} Some of the discrepancy concerning which standard to apply arises because there are at least four sections of the Revised Code that address the issue of modification and termination of parental rights and responsibilities in sole custody and/or shared parenting situations:

> **R.C. 3109.04(E)(1)(a), which requires a court to find a change in the circumstances of the child, residential parent, or either parent subject to the shared-parenting decree before modifying a decree allocating parental rights and responsibilities; R.C. 3109.04(E)(2)(a), which permits parents to jointly modify the terms of a shared-parenting plan by filing the modifications with the court, if the court finds that the modifications are in the best interest of the child; R.C. 3109.04(E)(2)(b), which permits a court to modify the terms of a shared-parenting plan upon its own motion if the court finds that the modifications are in the best interest of the child; and R.C. 3109.04(E)(2)(c), which permits the termination of a shared-parenting plan if the court finds that shared parenting is not in the best interest of the child.**

*Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 5.

**{¶30}** The determination as to which section of the Revised Code is applicable in a particular case is contingent upon the factual posture of the case and depends upon whether a court is dealing with a sole legal custodian or a shared parenting arrangement; whether the court is seeking to modify a shared parenting decree in the context of the status of the residential parent or legal custodian versus modification of a "term" of a shared parenting plan; and, whether a court is addressing issues concerning a modification or a termination. *See Fisher v. Hasenjager*, ¶¶ 31-34. The Ohio Supreme Court attempted to clarify the matter in its decision in *Fisher*. However, interpretive confusion still remains because the majority opinion did not explicitly define its understanding as to whether the plan in question had been terminated or modified as to the designation of residential parent and legal custodian. *See Fisher, supra* (Pfeifer, J., dissenting), ¶¶ 38-60; Change of Circumstances in Shared Parenting Cases Since *Fisher v. Hasenjager*, 25 No. 1 Ohio Dom. Rel. J. NL 1 (2013). Furthermore, the Ohio Supreme Court did not analyze the application of R.C. 3109.04(E)(2)(c) in its decision, and that is the section at issue in this case.

**{¶31}** The first section in question, R.C. 3109.04(E)(1)(a), which Vance claims is applicable, provides as follows:

> **The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds,**

> **based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.**
>
> **The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.**
>
> **The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a).**

{¶32} Under this provision, trial courts must determine three things: "(1) Has there been a change in circumstances? (2) Is this modification in the best interest of the child? (3) Will the harm that will result from the change be outweighed by the benefits that will result from the change?" *Clark v. Smith*, 130 Ohio App.3d 648, 653 (3d Dist. 1998); *Logan v. Holcomb*, *supra*.

{¶33} Conversely, Shannon points us to R.C. 3109.04(E)(2)(c), which provides, in relevant part:

> **(E)(2) In addition to a modification authorized under division (E)(1) of this section:**

\* \* \*

**(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best in interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, \* \* \* upon the request of one or both parents, that shared parenting is not in the best in interest of the children.**

{¶34} R.C. 3109.04(E)(2)(c) merely requires that the party seeking termination of a shared parenting plan must show that the termination is in the best interests of the minor child, without necessitating a finding of a change of circumstances. *See Kougher v. Kougher*, *supra* at ¶ 18. ("The appellate courts that have dealt with this specific question have concluded that R.C. 3109.04(E)(2)(c), clearly labeled in the statute as a different procedure from that detailed in R.C. 3109.04(E)(1)(a), requires only that the termination of a shared-parenting decree be in the best interests of the child."); *Logan v. Holcomb, supra* (containing a more detailed discussion of the issues and a listing of numerous other cases concurring with *Kougher*); *Patton v. Patton*, 141 Ohio App.3d 691, 695, 2001-Ohio-2117 (3d Dist.) (a court may terminate a prior shared-parenting decree if it determines that such is in the best interest of the child and this

-19-

determination may be made without a preliminary determination into whether there was a change in circumstances).

{¶35} Under the plain language of the statute, it would appear that Section (E)(2)(c) would be applicable in this case in that Shannon has clearly requested *termination* of the entire shared parenting arrangement. However, the trial court was mindful of the Ohio Supreme Court majority's statements in *Fisher* concerning how the designation of a residential parent and legal custodian was "critical to the life of a child" and holding "that a modification of the designation of a residential parent and legal custodian of a child requires that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child." *Fisher* at ¶¶ 36-37. Therefore, the trial court analyzed the facts in this case by the more stringent requirements set forth in R.C. 3109.04(E)(1)(a), and found that a change of circumstances had occurred, as well as finding that the modification was in the best interest of the children and that the benefits from the change will be outweighed by any potential harm.

{¶36} Under the facts in this particular case, the end result does not change regardless as to which section of the Ohio Revised Code is utilized. As stated above, it would appear that Section (E)(2)(c) would be applicable in this case, as Shannon has requested a termination of the entire shared parenting arrangement, and the trial court found that the continuation of the shared parenting arrangement

had become unworkable and it was no longer in the children's best interests. However, *even if* a change in circumstances would have been required, under Section (E)(1)(a), the record clearly supports the trial courts findings that all of the statutory requirements of R.C. 3109.04(E)(1)(a) had also been met.

**{¶37}** Therefore, based on the above, the trial court did not err in terminating the parties' shared parenting plan. The second assignment of error is overruled.

*Third Assignment of Error –*
*Residential Parent/Best Interest of Children*

**{¶38}** Vance argues that the trial court erred in finding that it was in the best interests of the children to name Shannon as the residential parent. He complains that the trial court failed to substantiate its decision with specific findings of facts and conclusions of law in response to his request pursuant to Civ.R.52. He also asserts that the trial court failed to properly consider the factors under R.C. 3109.04(F)(2) and R.C. 3109.04(E)(1)(a)(iii). And, he contends that the trial court "overlooked much credible evidence/testimony" and improperly "gave deference to Shannon's assertions" rather than "the credible testimony" of other "non-biased witnesses." (Appellant's Reply Br. p. 12)

**{¶39}** After deciding to terminate a shared parenting plan, "the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under

divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and if no request for shared parenting ever had been made."  R.C. 3109.04(E)(2)(d).   Pursuant to R.C. 3109.04(B)(1), trial courts are required to "take into account that which would be in the best interest of the children" when determining how to allocate parental rights and responsibilities.

{¶40} R.C. 3109.04(F) provides a non-exclusive list of relevant factors to be utilized in helping to determine what would be in a child's best interest.

> **(1)   In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**
>
> **(a)   The wishes of the child's parents regarding the child's care;**
>
> **(b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**
>
> **(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**
>
> **(d)   The child's adjustment to the child's home, school, and community;**
>
> **(e)   The mental and physical health of all persons involved in the situation;**

**(f)    The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)    Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)    Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * ***

**(i)    Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

{¶41} In determining the best interest of a child under R.C. 3109.04(F)(1), the court has discretion in determining which factors are relevant. *Hammond v. Harm*, 9th Dist. No. 23993, 2008–Ohio–2310, ¶ 51. The factors are merely to provide guidance for the trial court in determining what is in the child's best interest, and each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court. A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody. *Shaffer v. Shaffer*, 3d Dist. No. 11–04–22, 2005–Ohio–3884, ¶ 20.

{¶42} First, we do not agree with Vance's claim that the trial court issued only a "general" verdict and that he was entitled to findings of fact and conclusions of law pursuant to Civ.R. 52. Civ.R. 52 requires the court to make findings of fact and conclusions of law when properly requested by either party. Findings of fact and conclusions of law have a twofold purpose: they explain the factual and legal rationale for the trial court's decision and, as a consequence, help make meaningful appellate review possible.

{¶43} In this case, the trial court issued a thorough and detailed eighteen-page judgment entry in which it outlined its findings of facts and conclusions of law under all of the applicable statutory sections, including six pages devoted to an analysis of the "best interest" of the children under R.C. 29109.04(F)(1). It is not realistic to expect a trial court to include a written analysis of each and every factual bit of information that was presented during a three-day hearing. Merely because the trial court chose to summarize its findings, and only list *some* of the pertinent facts that were instrumental in its decision, does not mean that it did not consider and weigh all of the evidence before it. In denying Vance's Civ.R. 52 motion, the trial court stated:

> **The Court had the opportunity to see, hear and observe each witness who testified. The Court also considered the credibility and the weight of each witness's testimony. The Court in making its decision reviewed the voluminous record and more than two hundred exhibits. The Court considered the weight and the relevance of all of the evidence. The Court does not**

**make findings of fact as to each and every piece of evidence and the omission of the Court to make such findings does not suggest that the Court did not consider the facts in arriving at the ultimate decision. The Court must look at the sufficiency of the evidence, the credibility of the witnesses and the weight given the testimony when addressing contested issues.**

(Sept. 26, 2012 J.E.) Vance's argument about the trial court's failure to make separate findings of fact is not well taken.

{¶44} Also, Vance's assertion that the trial court failed to properly consider the factors under R.C. 3109.04(F)(2) and R.C. 3109.04(E)(1)(a)(iii) is also without merit. R.C. 3109.04(F)(2) lists some of the factors that a trial should consider "in determining whether shared parenting is in the best interest of the children." The trial court had already determined that the shared parenting plan should be terminated, and was utilizing the R.C. 3109.04(F)(1) factors to determine the best interests of the children in naming which parent was to be the custodial parent. Furthermore, the trial court certainly did consider some of the R.C. 3109.04(F)(2) factors when it terminated the shared parenting decree, especially Section (F)(2)(a) concerning "the ability of the parents to cooperate and make decisions jointly, with respect to the children." *See* ¶ 10 above.

{¶45} Likewise, R.C. 3109.04(E)(1)(a)(iii) is applicable when a court is *modifying* a prior decree under R.C. 3109.04(E)(1). As discussed above, in response to the second assignment of error, the trial court was terminating the shared parenting plan under R.C. 3109.04(E)(2)(c).

{¶46} The essence of Vance's complaints concerning this assignment of error was that the trial court gave more weight and credibility to the evidence demonstrating that it was in the best interest of the children to name Shannon the residential parent. We agree that there was evidence before the trial court that was positive for each of the parents, and also some that was negative for each of the parents. Essentially, Vance is asking this Court to reconsider and reweigh the trial court's assessment of the evidence. It is not our position to substitute our judgment for that of the trial court. In *Brammer I*, we reversed because there was an *absence of credible evidence* to justify moving the children out of Ohio. That was not the case during the current hearings.

{¶47} When reviewing a trial court's best interests analysis, we need only address two items: "(1) [whether] the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1); and (2) [whether] there is competent, credible evidence supporting the trial court's conclusion that it was in the children's best interest to designate [the other parent] as residential parent." *Heiser v. Heiser*, 3d Dist. No. 10-07-02, 2007-Ohio-5487, ¶ 27. Here, the first prong of our inquiry is satisfied because the trial court explicitly indicated that it considered all of the factors contained in R.C. 3109.04(F)(1) and then it separately and thoroughly addressed each item of R.C. 3109.04(F)(1) in its judgment entry.

{¶48} Further, we find that the second prong of our inquiry is satisfied. Based on the evidence adduced at the hearing, there was considerable evidence supporting the trial court's decision that it would be in the children's best interests to name Shannon as the residential and custodial parent.

{¶49} Competent, credible evidence supported the trial court's finding that Shannon facilitated visitation and offered Vance additional time and encouraged him to visit the children in Tennessee and watch their games and participate in other school related activities. Vance, on the other hand, did not afford Shannon those same opportunities. (J.E., p. 15) Vance was considering changing the school the boys would attend and did not share that information with Shannon. Vance also did not share information with Shannon about Keegan's IEP, about parent-teacher conferences, and about Hayden's graduation ceremony at the end of the school year. He did not communicate to her that the boys were taking music lessons in Marion, and never told her that there had been several times when Hayden had "emotional breakdowns" at school. (Tr. 542) He did not inform her that the boys were beginning psychological treatments with Dr. Stark or anything about what went on during the treatments, or that Keegan was going to begin treatment with Dr. Spare. When Shannon came to Ohio to pick the boys up for her previously scheduled two-week summer visitation, Vance informed her that he had subtracted individual visitation dates from her allotted two-week vacation time

and he determined that she was not entitled to any more time with the boys. He informed her that he was on his way to file charges against her and that he hoped they put out an "Amber Alert."

{¶50} The evidence further demonstrated that the boys had a very good relationship with their stepfather and step-siblings, and that they enjoyed doing many activities with them. Shannon testified about the boys' activities in the school and community. "They were involved in a lot of activities at school, they like the Lego Club, they had a reading club, they were involved in Boy Scouts which is done through the school." (Tr., p.509, 514-515) The boys went camping, canoeing, and spelunking. (Tr.,p.510-511) They attended a Tennessee Titans football game, presented the colors at the Nashville Predators hockey game, and participated in charity fundraising events. (Tr., p.510-511) Shannon participated in these activities as well. (Tr., p.511-512) Hayden played tackle football for the Blaze in a large football league. (Tr., p.512) Both boys played flag football in the spring. (Tr., p.512) They went to a day camp for football, went to the "Y" twice a week, and had made many friends. (Tr., p.514) There was evidence that the children were doing well in school, and that their educational needs were being met, both in Tennessee and in Ohio.

{¶51} Vance points to several portions of the record claiming to demonstrate that the termination of the shared parenting plan and naming of

Shannon as residential parent was not in the children's best interests. He also claims that it was erroneous for the trial court to give more weight to Shannon's testimony than his own. While there is indeed evidence suggesting that children's best interests might also be served if Vance was the residential parent, it is not so overwhelming as to suggest that the trial court abused its discretion in concluding to the contrary. *See Weese v. Griesheimer*, 4th Dist. No. 98CA2436 (Mar. 11, 1999) ("Upon review, we find strong evidence supporting both positions [as they relate to the child's best interests]. Bearing in mind that we are not free to substitute our judgment for that of the trial court, we find that the trial court did not err [in selecting one of the positions].").

{¶52} The trial court was well within its discretion to grant greater weight to the testimony of Shannon and her witnesses over the testimony of Vance and his witnesses. *See Sellers v. Sellers*, 4th Dist. No. 09CA45, 2010-Ohio-3712, ¶ 17 ("We observe that appellant's main complaint appears to be that the trial court did not credit her witnesses and their testimony. As we have noted, however, credibility, especially in child custody matters, is a matter reserved for the trier of fact and we will not second-guess credibility determinations."). It may be expected that each party and that party's relatives/friends/local educators would naturally possess a certain amount of bias. The FSC was probably the one witness that did not have any connections to either party, and it likely explains why the

trial court cited to the FSC's testimony in several instances in its judgment entry. Ms. Yanka was very decisive in her testimony, and in her report, that shared parenting was not recommended and that Shannon should be named the residential parent based on the best interest factors.

{¶53} We find that there is considerable evidence in the record in support of the trial court's determination that Shannon should be named the residential parent and legal custodian of the children. Accordingly, the trial court's decision was not an abuse of discretion and we overrule Vance's third assignment of error.

*Fourth Assignment of Error – Admission of Evidence*

{¶54} In his final assignment of error, Vance claims that the trial court abused its discretion when it admitted Defendant's Exhibits 41-46, because they were letters signed by Vance's counsel and sent to Shannon's counsel and were inadmissible under Evid.R. 408 (concerning the inadmissibility of offers to compromise). He also asserts that the trial court erred in not admitting Plaintiff's Exhibits 109 and 110, which were compilations of text messages between the parties that he claims would have supported his contention that he did communicate with Shannon.

{¶55} Trial courts have broad discretion in determining whether to admit or exclude evidence. *Moore v. Moore*, 182 Ohio App.3d 708, 2009-Ohio-2434 (3d

Dist.), ¶ 15. Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. *Id.*

**{¶56}** Because of the voluminous amount of exhibits, a separate date was set up to review the admissibility of the exhibits that weren't jointly stipulated as being admissible by the parties. (*See* June 26, 2012 Tr.) The record shows that each party's counsel had opportunity to offer arguments for and against admissibility concerning the exhibits that were in dispute and then the trial court considered the reasons concerning admissibility. We do not find that the process or the results demonstrated an abuse of discretion.

**{¶57}** Evid.R. 408 states that:

**Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose * * *.**

**{¶58}** Defendant's Exhibits 41-44 were letters between the parties' attorneys from December 2011, January 2012, and March 2012. However, however, they appear to be primarily communications concerning visitation time, scheduling, and discussions as to which parent would have the children when

-31-

(scheduling calendars were attached). Apparently the communication between the parties had deteriorated to the point where they felt it was necessary to communicate through counsel rather than directly with each other over these relatively routine parenting matters.

{¶59} In its final judgment entry, the trial court stated the following concerning its ruling on these letters.

> At trial [Vance] admitted that he penned parts of the letters. The Court upon review notes that some of the language in the letters is similar if not identical to that in [Shannon's] exhibits 21, 22, 24, 25, & 26, which were admitted as communications between the parties. The Court finds, therefore, that Defendant Exhibits 41-46 are admitted as statements made by a party. However, references in the letters as to compromise shall be redacted and excluded.

(J.E., p.4) Counsel for the parties had the opportunity to confer about what parts of these exhibits should be redacted, and anything that would be prohibited by Evid.R. 408 was redacted. Evidence Rule 408 states, "This rule also does not require exclusion when the evidence is offered for another purpose * * *." It would appear that the information contained in those exhibits was already before the trial court, and the purpose in admitting them was to demonstrate the difficulties in communications and working out shared parenting time that existed between the parties; there was no discussion of "compromise" or "settlement" that was not redacted. The trial court did not abuse its discretion concerning the admission of these exhibits.

{¶60} In its judgment entry, the trial court stated, "Plaintiff Exhibits 109 and 110 are a compilation of texts between the parties prepared by [Vance]. [Shannon] objects stating that they are incomplete and are not authenticated." (J.E., p.4)  The trial court sustained the objection.  (*Id.*)

{¶61} Vance argues that these texts (which he described as "data dumps" off of his cell phones) would support his claims that he communicated with Shannon, and that Shannon's assertion that the compilations of texts between the parties were incomplete and not authenticated was inaccurate.  During his testimony, he was shown the exhibits and he identified them as "various texts between her and I about things like, hey are you getting on Skype tonight, are we meeting in Lagrange, or, you know, about the kids, just further substantiation [to show cooperation and my communication]."  (Tr. 776)  His testimony then continued to discuss many of the times when he claimed he was cooperating and communicating with Shannon.  (*Id.*)

{¶62} Vance is correct in his contention that Shannon's attorney did not object to the discussion of these two exhibits during the hearing, but he did object at the hearing to determine what exhibits were admissible.  He claimed that the copies of the telephone text messages were not authenticated and were "defective, it's like it had been moved on the copier or something, it was stretched and blurred and not legible."  (June 26, 2012 Tr. 13).

**{¶63}** Vance never proffered these exhibits, so they are not before this Court to review, and he never offered any counter-argument at the admissions hearing as to why they should be admitted after Shannon's attorney objected to their admission. Therefore, we cannot conclude that there was any error in the exclusion of these text messages. And, even if there was, it must be considered to be harmless because Vance testified concerning the contents of the text messages. Therefore, the information he wished to place before the court was in evidence through his testimony. He has not specified how he was prejudiced.

**{¶64}** We do not find that the trial court abused its discretion in its decision concerning the admission and exclusion of evidence. The fourth assignment of error is overruled.

**{¶65}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**