[Cite as *Haldy v. Hoeffel*, 2020-Ohio-975.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

LISA R. HALDY,

    PLAINTIFF-APPELLEE,                    CASE NO.  7-19-08

    v.

TODD J. HOEFFEL,                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Juvenile Division
Trial Court No. 20134043

Judgment Affirmed

Date of Decision:   March 16, 2020

APPEARANCES:

    *Ian A. Weber* for Appellant

    *Deborah C. Rohrs* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Todd J. Hoeffel ("Todd"), appeals the July 12, 2019 judgment entry of the Henry County Court of Common Pleas—Juvenile Division, denying his motions for custody and shared parenting of his daughter, S.H-H. For the reasons that follow, we affirm.

{¶2} The genesis of this case stems from Todd's motion for custody filed on February 17, 2017, Lisa Haldy's ("Lisa") motion to modify parenting time filed on September 8, 2017, Lisa's motion to show cause filed on May 2, 2018, and Todd's motion for shared parenting filed on July 2, 2018.[1] (Doc. Nos. 107, 130, 147, 154).

{¶3} A show-cause hearing on Lisa's contempt motion was held on July 13, 2018 which resulted in the magistrate recommending that Todd be found in contempt for failing to pay Lisa's attorney's fees and honor his child support obligation as ordered. (Doc. No. 161). The trial court conducted its independent review of that decision and approved and adopted the magistrate's recommendations, including the opportunity for Todd to purge his contempt. (Doc. No. 162). However, on September 24, 2018, Lisa notified the trial court that Todd did not meet the conditions to purge contempt. (*See* Doc. No. 167). The trial court held a purge hearing on December 12, 2018 after which the magistrate issued a

---

[1] This court recited much of the factual and procedural background of this case in previous appeals, and we will not duplicate those efforts here. *See Haldy v. Hoeffel*, 3d Dist. Henry No. 7-17-02, 2017 WL 5989074 (the "2017 case").

magistrate's decision recommending the trial court impose a 30-day jail sentence with an order to report to jail on January 21, 2019. (Doc. No. 181). Todd objected to the magistrate's decision and requested the preparation of a transcript on January 8, 2019. (Doc. Nos. 182, 183). On January 14, 2019, Lisa filed her response to Todd's objections to the magistrate's decision.[2] (Doc. Nos. 185).

{¶4} On the parties' custody-related motions, hearings were held in the trial court on July 13, 2018, August 14, 2018, September 19, 2018, and November 21, 2018 before the magistrate. The magistrate issued its decision on April 1, 2019 recommending that Lisa be named the sole residential parent and legal custodian of S.H-H. subject to the parenting time set forth in the decision. (Doc. Nos. 179, 180, 195, 203). Todd objected to the magistrate's decision. (Doc. Nos. 198, 199, 200, 201). On July 12, 2019, the trial court journalized a judgment entry overruling Todd's objections to the magistrate's decisions (of December 31, 2018 and April 1, 2019) approving and adopting those orders with a single modification as to the calculation of the child support orders and an order to reflect the offset of the child

---

[2] Because Todd's objections to the magistrate's decision and Lisa's reply were not tacked down in the file folder before the judge conducted her independent review, the judge initially adopted and approved the magistrate's decision ordering the imposition of the 30-day jail sentence on Todd. However, after the judge became aware that one of the parties had objected to the magistrate's decision and requested the preparation of a trial transcript, she rescinded the judgment entry journalized on January 14, 2019 and held it for naught. (Doc. Nos. 183, 184, 187).

support obligation owed by Lisa in the April 1, 2019 magistrate's decision.[3] (Doc. No. 204).

{¶5} Todd filed his notice of appeal on August 8, 2019. (Doc. No. 206). He raises five assignments of error for our review. Since they are interrelated, we will first address Todd's first, second, third, and fifth assignments of error together followed by his fourth assignment of error.

### Assignment of Error No. I

**The Trial Court Abused Its Discretion By Terminating The Parties Shared Parent Plan And Naming The Plaintiff / Mother The Sole Residential Parent Of The Minor Child.**

### Assignment of Error No. II

**The Trial Court Abused Its Discretion By Holding The Fact That The Defendant / Father Had Child Support Arrears When In Fact He Had Tempoary [sic] Custody For Over A Year And Did Not Receive Any Support Payments From The Plaintiff / Mother During That Time.**

### Assignment of Error No. III

**The Trial Court Abused Its Discretion By Not Fully Considering The Guardian Ad Litem Report And The Psychological Report That Suggested The Minor Child Should Reside With The Defendant / Father.**

---

[3] The parties were previously ordered in the magistrate's decision to recalculate child support and submit the recalculation for inclusion in the trial court's judgment entry. (Doc. Nos. 195, 204). That recalculation never occurred. (*Id.*). This judgment entry also dismissed the three motions filed by Todd as a pro-se litigant on February 12, 2019. (Doc. Nos. 189, 190, 191, 204).

**Assignment of Error No. V**

**The Trial Court Abused Its Discretion By Determining That The Plaintiff / Mother Should Be The Sole Residential Parent Of The Minor Child Against The Manifest Weight Of The Evidence That Show The Defendant / Father Should Care For The Minor Child.**

{¶6} In his first assignment of error, Todd argues that the trial court abused its discretion in terminating the parties shared-parenting plan and naming Lisa as the sole-residential parent and legal custodian. In his second, third, and fifth assignments of error, Todd argues that the weight of the evidence does not support the trial court's order placing S.H-H. with Lisa. In particular, he argues that the trial court did not properly apply the factors in R.C. 3109.04 and 3109.051.

*Standard of Review*

{¶7} As an initial matter, we note that Supreme Court of Ohio has concluded "that custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The facts before us illustrate that principle.

{¶8} "[T]he juvenile court has exclusive original jurisdiction to determine the custody of a child who is not a ward of another Ohio court." *Redmond v. Davis*, 7th Dist. Columbiana No. 14 CO 37, 2015-Ohio-1198, ¶ 33, citing R.C. 2151.23(A)(2). *See also Rowell v. Smith*, 10th Dist. Franklin No. 12AP-802, 2013-Ohio-2216, ¶ 57. A juvenile court is to exercise its jurisdiction in a child-custody matter in accordance with R.C. 3109.04. R.C. 2151.23(F)(1).

**{¶9}** "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). ""Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶10}** Moreover, in considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and

created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} Turning to the facts of this case, the record reflects that the trial in this matter lasted four days with fourteen witnesses testifying. In support of his motion for custody and motion for shared parenting, Todd presented eight witnesses and testified in support of his motions. In support of her motion to modify parenting time, Lisa offered the testimony of six witnesses and also testified in support of her motion.

*Analysis*

{¶12} Out the outset we note that Lisa has always been designated as the sole-residential parent and legal custodian until the issuance of the temporary orders by the trial court on August 22, 2018. (Doc. No. 66); (*See* Doc. No. 160). *See State ex Rel. Thompson v. Spon*, 83 Ohio St.3d 551, 554-555 (1998) (concluding that the nature of a temporary order is that it is temporary). Therefore, we analyze the facts before us under R.C. 3109.04.

{¶13} R.C. 3109.04(E)(1)(a) authorizes a trial court to modify or terminate a prior decree allocating parental rights and responsibilities. The statute outlines the

elements that the trial court must consider in its determination of whether a modification of the prior decree is warranted. Specifically, R.C. 3109.04(E)(1) states the following regarding a modification of a prior custody decree:

(a)   The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)   The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶14} When a court is asked to modify a custody decree, the initial determination to be made by the trial court is whether there has been a change in circumstances of the child or the residential parent since the prior court order. *Wyss v. Wyss*, 3 Ohio App.3d 412, 414 (10th Dist.1982).  This finding should be made prior to weighing the child's best interest. The purpose of requiring a finding of a

change in circumstances is to prevent a constant relitigation of issues that have already been determined by the trial court. *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist.1994), citing *Perz v. Perz*, 85 Ohio App.3d 374, 376 (6th Dist.1993).

> 'The clear intent of that statute is to spare children from a constant *tug of war* between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'

(Italics added.) *Flickinger*, 77 Ohio St.3d at 418, quoting *Wyss*, 3 Ohio App.3d at 416. Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order. R.C. 3109.04(E)(1)(a).

{¶15} In reviewing whether the evidence presented in this case demonstrated that a change in circumstances has occurred, we are reminded that the change must be of substance, not slight or inconsequential. *Flickinger*, 77 Ohio St.3d at 415. In addition, R.C. 3109.04(E)(1)(a) does not require that the change be "substantial," nor does "the change * * * have to be quantitatively large, but rather, must have a material effect on the child." *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. Logan No. 8-06-06, 2007-Ohio-1087, ¶ 16, citing *Tolbert v. McDonald*, 3d Dist. Allen No. 1-05-47, 2006-Ohio-2377, ¶ 31, citing *Flickinger* at 417, citing *Perz* at 374.

*Change in Circumstances*

**{¶16}** The record before us reveals that the parties acknowledge an agreement "that [] [S.H-H.] attending kindergarten is by law considered a change in circumstances." (Doc. No. 66); (*See* Doc. No. 107). Based on this agreement, the trial court never addressed whether or not there was a change of circumstances in the magistrate's decision or subsequent judgment entry. (*See* Doc. Nos. 195, 204). Notwithstanding the trial court's lack of analysis on whether there was a change in circumstances, we cannot conclude that the trial court abused its discretion by failing to analyze whether there was a change in circumstances because such was never challenged by objection or raised (by Todd) as plain error. *See* Civ.R. 53(D)(3)(b)(iv). App.R. 12(A)(1)(b). App.R. 16(A)(7). *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 19, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 333 (1983), fn. 2 (stating "justice is far better served when [an appellate court] has the benefit of briefing, arguing, and lower court consideration before making a final decision."). Thus under these circumstances, we need not consider whether the trial court plainly erred. *Id.*, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (stating that appellate courts "'are not obligated to search the record or formulate legal arguments on behalf of the parties, because "appellate courts do not sit as self-directed boards of legal

inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"""). *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (explaining that reviewing court will not craft plain error argument for an appellant who fails to raise one).

*Best-Interest Determination*

{¶17} We now turn to the trial court's determination that it was in the best interest of S.H-H. for Lisa to remain her residential parent and legal custodian. R.C. 3109.04(F)(1) provides that:

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or *a modification of a decree allocating those rights and responsibilities*, the court shall consider all relevant factors, including, but not limited to:
>
> (a)    The wishes of the child's parents regarding the child's care;
>
> (b)    If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)    The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d)    The child's adjustment to the child's home, school, and community;
>
> (e)    The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(Emphasis added.) R.C. 3109.04(F)(1). Because Todd also filed a motion for

shared parenting and Lisa filed a motion to modify parenting time under R.C.

3019.12, the trial court was also required to consider the best-interest factors set

forth in R.C. 3109.051(D)(1)-(16). R.C. 3109.051(D) states in its pertinent parts

that:

> (D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
>
> (1)   The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2)   The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
>
> (3)   The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
>
> (4)   The age of the child;
>
> (5)   The child's adjustment to home, school, and community;
>
> (6)   If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a

specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7)   The health and safety of the child;

(8)   The amount of time that will be available for the child to spend with siblings;

(9)   The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household

that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

{¶18} In addressing each of the statutory factors relevant to the instant case, the record supports that the trial court considered R.C. 3109.04(F)(1)(a) as each of the parents wished to be named S.H-H.'s residential parent for school purposes. Moreover, each parent expressed significant concerns with S.H-H. residing with the other parent.

{¶19} The trial court directly referenced R.C. 3109.04(F)(1)(b) indicating it did not speak to S.H-H.; however, the trial court did take testimony from the GAL who also presented a report and recommendation.

{¶20} As to R.C. 3109.04(F)(1)(c), there was ample testimony regarding S.H-H's interaction with the parents, her half-brother and her soon-to-be-step sister, and other relatives.

{¶21} The record further supports that the trial court considered R.C. 3109.04(F)(1)(d), in regards to S.H-H.'s adjustment to each parent's home, school, and to her community in both locals.

{¶22} R.C. 3109.04(F)(1)(e) was considered by the trial court through the professional testimonies of Dr. Peters, Dr. Babula, and Kathy Bechstein ("Kathy") concerning the mental health of Lisa, Todd, and S.H-H.[4]

{¶23} Further, the trial court considered which parent was more likely to honor and facilitate parenting-time rights or visitation by considering the testimony of Dr. Peters, Kathy, and the testimonies of the parents, thereby satisfying R.C. 3109.04(F)(1)(f).

{¶24} The trial court expressly addressed Todd's failure to pay his child support obligation resulting in an arrearage in excess of $20,000.00 in satisfaction of R.C. 3109.04(F)(1)(g). *See Kauble v. Pfeiffer*, 3d Dist. Marion No. 9-03-36, 2003-Ohio-6988, ¶ 20, (concluding that it is entirely appropriate for the trial court

---

[4] Dr. Peters performed psychological evaluations of Lisa and Todd as part of a custodial evaluation submitted to the trial court; Dr. Babula evaluated Lisa privately and reviewed Dr. Peter's summary of the custodial evaluation, profile and results forms, and sentence completion tasks which included information on Lisa, Todd, and S.H-H.; and Kathy Bechstein testified regarding her contact with Lisa and S.H-H. as their clinical therapist. (July 13, 2018 Tr. at 111-112); (Aug. 14, 2018 Tr. at 2-6); (Sep. 19, 2018 Tr. at 2-14); (Nov. 21, 2018 Tr. at 2-16).

to consider an obligor's failure to make child support payments under R.C. 3109.04(F)(1)(g) in the trial court's determination of parental rights and responsibilities).[5]

{¶25} The trial court considered R.C. 3109.04(F)(1)(h) when it addressed the parents' history of alcohol-related offenses and Todd's interference with a 911 call "which arose out of a dispute between the parties." (Doc. Nos. 195, 204).

{¶26} Regarding R.C. 3109.04(F)(1)(j), the trial court recognized that the parties do not reside in the same state nor had they ever done so.

{¶27} In contemplation of whether to grant Todd's motion for shared parenting, the trial court also considered the factors set forth in R.C. 3109.051(D)(1)-(16). Since most of the factors mirror the best-interest factors set forth in R.C. 3109.04(F)(1), which we have detailed above, we will not duplicate those efforts here.

{¶28} Moreover, the record supports that the trial court considered R.C. 3109.051(D) through its independent review of the magistrate's decision.

---

[5] Here, Todd argues that because he had custody of S.H-H. under the temporary orders and Lisa was not required to pay child support that the trial court should not have considered his arrears because he was entitled to an offset. Ultimately, the trial court modified the magistrate's decision to include both a recalculation of Todd's child support obligation and an offset for the year in which Todd did not receive child support payments from Lisa. (Doc. No. 204). However, notwithstanding this recalculation and offset, Todd still had significant arrearages which the offset could and would not extinguish. This recalculation and offset do not abrogate the trial court's statutory requirement to consider a particular best-interest factor concerning his failure to pay his child support arrearages.

-17-

{¶29} A trial court's determination of what is in the best interest of the child will not be reversed absent an abuse of discretion. *Errington v. Errington*, 3d Dist. Wyandot No. 16-01-17, 2002-Ohio-1419, *2, citing *Patton v. Patton*, 141 Ohio App.3d 691, 693 (3d Dist.2001), citing *Masters*, 69 Ohio St.3d at 85. This standard requires that the trial court's reasoning not be disturbed unless it was "unreasonable, arbitrary or unconscionable," because the trial judge is best equipped to determine and weigh the credibility of the proffered testimony. *Flickinger*, 77 Ohio St.3d at 416-418; *Blakemore*, 5 Ohio St.3d at 219.

{¶30} On appeal, Todd asserts that the trial court failed to properly apply and consider the best-interest factors and argues that the manifest weight of the evidence supported granting his motion for custody or motion for shared parenting. Specifically, Todd argues that because the magistrate implicitly found the testimony of Dr. Babula and Kathy more credible than Dr. Peters and the GAL, the magistrate did not "fully" consider the best-interest factors or granted certain factors greater weight than they should be afforded. *See Sovern v. Sovern*, 3d Dist. Union No. 14-16-09, 2016-Ohio-7542, ¶ 21, quoting *Krill*, 2014-Ohio-2577, at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. ("'The trial court "has discretion in determining which factors are relevant," and "each factor may not necessarily carry the same weight or have the same relevance,

depending upon the facts before the trial court.""""). We conclude otherwise, as Todd has failed to establish that the trial court abused its discretion in its determinations.

{¶31} In considering whether the trial court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶32} In deciding whether to grant Todd's motion for custody and motion for shared parenting and Lisa's motion to modify parenting time, the trial court considered whether such requests were appropriate and in S.H-H.'s best interest by weighing the relevant-statutory factors. *See* R.C. 3109.04(F)(1)(a)-(j). *See also* R.C. 3109.051(D)(1)-(16). After our review of the record, we cannot say that the trial court's balancing of the statutory factors or its application of weight assigned to each factor was arbitrary, unreasonable, or unconscionable. We further conclude that there is competent, credible evidence to support the trial court's findings, and that the trial court's findings are not against the manifest weight of the evidence.

{¶33} For these reasons, Todd's first, second, third, and fifth assignments of error are overruled.

**Assignment of Error No. IV**

**The Trial Court Abused Its Discretion By Ordering The Defendant / Father To Serve Thirty Days In Jail For Failure To Pay Child Support.**

{¶34} On appeal and in his fourth assignment of error, Todd argues that the trial court abused its discretion in ordering him to serve 30 days in jail for his failure to pay his child support obligation because the magistrate was biased.[6]

{¶35} Todd asserts no standard of review in his brief nor does he present *any* legal authority in support of his position. "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook,* 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "'Moreover, "[i]f an argument exists that can support this assigned error, it is not this court's duty to root it out."'" *Id.*, quoting *Hahn v. Hahn*, 8th Dist. Cuyahoga No. 96984, 2012-Ohio-594, ¶ 29, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 WL 224934 *8 (May 6, 1998).

---

[6] Todd did not raise the issue of the magistrate's bias in his objections to the April 1, 2019 magistrate's decision, and consistent with his brief, he also did not present *any* legal authority in support of his position before the trial court. (*See* Doc. No. 198).

-20-

**{¶36}** "[A]n appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2): 'if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 4, quoting App.R. 12(A); *See also Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988).

App.R. 16(A)(7) provides:

(A) Brief of the Appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

* * *

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the *reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.* The argument may be preceded by a summary.

(Emphasis added.) App.R. 16(A)(7). Since we are not required to address arguments that have not been sufficiently presented for review or supported by proper authority under App.R. 16(A)(7), we will not address Todd's argument. *See Black v. St. Marys Police Dept.*, 3d Dist. Mercer No. 10-11-11, 2011-Ohio-6697, ¶ 14, citing App.R. 12(A)(2). *See also Meerhoff v. Huntington Mtge. Co.*, 103 Ohio App.3d 164, 169 (3d Dist.1995). "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Rodriguez* at ¶ 7, citing *State v. McGuire*, 12th Dist. Preble No. CA95-01-001, 1996

-21-

WL 174609, *14 (Apr. 15, 1996). """An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.""" *Id.*, quoting *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998), quoting *McGuire* at *14. Moreover, Todd's failure to cite *an*y legal authority to support his argument that the trial court erred in some capacity renders his assignment of error a nullity pursuant to App.R. 12(A)(2).

{¶37} As a result, Todd's fourth assignment of error is overruled.

{¶38} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**