[Cite as *Plaza v. Kind*, 2018-Ohio-5215.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

MONICA PLAZA,

     PLAINTIFF-APPELLANT,         CASE NO.  2-18-05

     v.

JOSHUA KIND,                  O P I N I O N

     DEFENDANT-APPELLEE.

---

MONICA PLAZA,

     PLAINTIFF-APPELLANT,         CASE NO.  2-18-06

     v.

JOSHUA KIND,                  O P I N I O N

     DEFENDANT-APPELLEE.

---

**Appeals from Auglaize County Common Pleas Court
Trial Court Nos. 2018-PAT-006 and 2018-PAT-007**

**Judgments Affirmed**

**Date of Decision:   December 26, 2018**

---

APPEARANCES:

     *Randy A. LaMarr, Jr.* **for Appellant**

     *Joseph A. Benavidez* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-Appellant, Monica Plaza ("Mother"), appeals the May 10, 2018 judgment of the Auglaize County Court of Common Pleas, Juvenile Division, finding that, under the Uniform Child Custody Jurisdiction and Enforcement Act, Michigan is the "home state" of Mother's children with Defendant-Appellee, Joshua Kind ("Father") for purposes of vesting jurisdiction in a court to make an initial custody determination. As a result, the trial court determined that it did not have jurisdiction to proceed on Mother's "Complaint for Paternity," in which she requested that the trial court designate her as the children's residential parent and legal custodian, and dismissed the complaint. On appeal, Mother claims that the trial court erred (1) in determining that Michigan was the children's "home state" at the time she filed her custody action in Ohio, and (2) when it overruled her motion for relief from judgment without holding an evidentiary hearing.[1]

*Relevant Facts and Procedural History*

{¶2} Father and Mother were in a long-term relationship, but never married. They lived together in Southgate, Michigan, where both parties' family members reside. Two children were born to the couple when they were together in Michigan:

---

[1] The underlying action originated with two case numbers in the trial court, 2018-PAT-006 and 2018-PAT-007. The cases were consolidated for purposes of appeal. We will use the enumeration assigned to the document numbers in case number 2018-PAT-006 when we make reference to the docket.

-2-

C.K. born in 2011 and L.K. born in 2015.[2]  In the beginning of 2017, the parties ended their romantic relationship.

{¶3} In May of 2017, Mother signed a residential lease to live with a boyfriend in Wapakoneta in Auglaize County, Ohio.  Father continued to reside in Michigan.  The parties had an informal agreement regarding custody of the children, which consisted of Father having the children every other weekend and some days during the week.  The frequency of Father's visitation during the week was disputed by the parties.  Even though mother had moved her residence to Auglaize County, Ohio, she continued to work for the same employer in Michigan until January 2018.  The children were also enrolled in school and daycare in Michigan until early 2018 and commuted with Mother to Michigan during the week when she exercised parenting time.

{¶4} On January 23, 2018, Mother filed a "Complaint for Paternity" in the Auglaize County, Ohio, Juvenile Court.  In this complaint, Mother maintained that she had been a resident of Ohio for over six months.  She further requested that the trial court name her the residential parent and legal custodian of the parties' children.

{¶5} On March 20, 2018, Mother filed a "Motion for Temporary Order," informing the trial court that Father had filed a "Verified Complaint for Custody" in the Third Judicial Circuit Court of Wayne County, Michigan, alleging *inter alia*

---

[2] Although paternity had never been established, the parties did not dispute that Father is the natural father of C.K. and L.K.

that the parties' children have not lived long enough in Ohio to establish jurisdiction in the Auglaize County Ohio Court over the initial custody proceeding.[3] Mother disputed this contention in her motion and argued that Ohio is the "home state" of the children and asserted that Ohio had jurisdiction over the custody proceedings. Mother further indicated that she had objected to the Wayne County Michigan Court having jurisdiction in the custody proceedings initiated by Father. Mother requested that the trial court issue temporary orders naming her the children's residential parent and legal custodian.

{¶6} On May 9, 2018, the trial court held a hearing on the issue of whether it had jurisdiction to proceed on Mother's "Complaint for Paternity." Both parties presented their own testimony as well as testimony of others in support of their respective positions regarding jurisdiction. After closing statements, the trial court noted that it had contacted the judge assigned to Father's custody case pending in the Wayne County Michigan Court pursuant to R.C. 3127.09 to discuss proper jurisdiction to determine custody of the children under the Uniform Child Custody Jurisdiction and Enforcement Act. The trial court explained that an agreement was reached that the Ohio Court would conduct an evidentiary hearing on the matter and that the Michigan Court would defer to the ruling of the Ohio Court. The trial court found that based on the testimony presented Michigan is the home state of the

---

[3] The record indicates that Father filed his custody action in Michigan on March 6, 2018.

children for purposes of vesting jurisdiction in a court for an initial child custody determination under R.C. 3127.15(A). The trial court noted that "[w]hile the Court understands that [Mother] herself may have been [in Ohio] for six months, nonetheless, it appears from the testimony that's been presented to the Court, that the children were still following a visitation schedule that the parties had agreed upon," which included the children living in Michigan with Father for part of time. (Doc. No. 31 at 63-64).

{¶7} On May 10, 2018, the trial court issued a judgment entry finding that Michigan was the "home state" of the parties' children at the time mother initiated the Ohio custody action, thereby concluding that it did not have jurisdiction to proceed on Mother's complaint and ordering the complaint to be dismissed.

{¶8} Mother subsequently filed a notice of appeal from this judgment entry and asserted the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO APPLY THE FACTORS TO DETERMINE A CHILD'S HOME STATE AS SET FORTH IN OHIO REVISED CODE SECTION 3127.15(A).**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONDUCT AN EVIDENTIARY HEARING WITH REGARD TO THE 60(B) MOTION THAT WAS FILED WITH THE COURT.**

{¶9} For ease of discussion, we elect to address the assignments of error out of order.

*Second Assignment of Error*

{¶10} In her second assignment of error, Mother claims that the trial court erred in failing to conduct an evidentiary hearing before overruling her motion for relief from judgment under Civ.R. 60(B).

*Trial Court Proceedings*

{¶11} The record reflects that *after* Mother filed her notice of appeal from the trial court's judgment entry pronouncing its decision on jurisdiction, Mother *then* filed a "Motion for Relief of Judgment Pursuant to Civil Rule 60(B)." Mother filed a "Motion to Stay Proceedings" with this Court asking that the appeal of the trial court's ruling on jurisdiction be stayed until the trial court ruled on her Civ.R. 60(B) motion. This Court granted Mother's motion for a stay and remanded the case to the trial court so that it could rule on the pending Civ.R. 60(B) motion.

{¶12} The trial court overruled Mother's Civ.R. 60(B) motion on August 8, 2018. Upon receiving notification of the ruling, this Court *sua sponte* lifted the stay of the appeal from the trial court's judgment entry on jurisdiction and issued a briefing schedule in that appeal. However, Mother did not file a *separate* notice of appeal from the trial court's judgment entry overruling her Civ.R. 60(B) motion.

*Appeal*

**{¶13}** On appeal, Mother now seeks to assign error to the trial court's decision to overrule her Civ.R. 60(B) motion without having filed a separate notice of appeal from that judgment. Consequently, this motion is not properly before us on this appeal as a separate notice of appeal was required and was not filed with respect to that ruling. *See Cherol v. Sieben Invests.*, 7th Dist. Mahoning No. 05 MA 112, 2006-Ohio-7048, ¶ 19 (noting the original judgment and the judgment on a Civ.R. 60(B) motion "are two separate and distinct final appealable orders which require separate notices of appeal to vest this Court with jurisdiction to review either"). "The proper procedure for a party to obtain appellate review of the denial of a Civ.R. 60(B) motion to vacate a judgment is to file a separate notice of appeal from the denial of that motion; it cannot be challenged in the appeal arising from the original judgment." *Cherol* at ¶ 19.

**{¶14}** Therefore, because we do not have a separate notice of appeal from the trial court's judgment on the Civ.R. 60(B) motion, we can neither decide nor consider that motion since it was filed *after* the trial court issued its decision and judgment entry on the jurisdictional matter, which is the subject of *this* appeal. *Bank of New York v. Bartmas*, 10th Dist. Franklin No. 04AP-1011, 2005-Ohio-6099, ¶ 7. In other words, we do not have jurisdiction to hear arguments regarding the denial of a Civ.R. 60(B) motion in a direct appeal from the trial court's original judgment.

*Brooks v. Merchant*, 8th Dist. Cuyahoga No. 89462, 2008-Ohio-932, ¶ 13. Accordingly, our review is limited to the record as it existed when the trial court entered its judgment on jurisdiction. *Bartmas* at ¶ 9, citing *Chickey v. Watts*, 10th Dist. Franklin No. 04AP-818, 2005-Ohio-4974.

**{¶15}** As such, we overrule the second assignment of error and shall proceed to address the issue raised by Mother challenging the trial court's decision and judgment entry on jurisdiction.

*First Assignment of Error*

**{¶16}** In her first assignment of error, Mother claims that the trial court erred in determining that Michigan, rather than Ohio, was the children's "home state" at the time Mother filed the custody proceeding in Ohio.

*Relevant Law*

**{¶17}** The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which was adopted by the General Assembly in 2004 and became effective in 2005, is codified in Ohio under R.C. Chapter 3127. The primary purpose of the UCCJEA is "to avoid jurisdictional competition and conflict with courts of other jurisdictions" in custody matters. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 244, 2008-Ohio-853. The UCCJEA gives "jurisdictional priority and exclusive continuing jurisdiction to the home state." *Id.* at 245. " 'There can only be one home state and therefore, competition for jurisdiction between the states is

avoided.' " *In re B.P.*, 11th Dist. Trumbull No. 2011-T-0032, 2011-Ohio-2334, ¶ 37, quoting SOWALD & MORGANSTERN DOMESTIC RELATIONS LAW, Sec. 17:36, citing *Rosen*, *supra*. In order to strengthen the certainty of home-state jurisdiction, the UCCJEA eliminates the review of subjective factors, such as the child's best interests, from the original jurisdictional inquiry that existed in the former version of the UCCJEA. *Rosen* at ¶ 21. Notably, Michigan has also adopted the UCCJEA. *See* M.C.L.A. 722.1101 *et seq*.

{¶18} Consistent with the UCCJEA, R.C. 3127.15(A)(1) provides criteria for the initial vesting of jurisdiction in an Ohio court over child custody disputes, and provides:

> **(A) Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:[4]**
>
> **(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.**
>
> **(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum * * * and both of the following are the case:**

---

[4] According to R.C. 3127.01(A)(4) "Child custody proceeding" means a proceeding in which legal custody, physical custody, parenting time, or visitation with respect to a child is an issue."

**(a)   The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.**

**(b)   Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.**

**(3)   All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child * * *.**

**(4)   No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.**

**{¶19}** Thus, R.C. 3127.15(A) "provides four types of initial child-custody jurisdiction: home-state jurisdiction, significant-connection jurisdiction, jurisdiction because of declination of jurisdiction, and default jurisdiction." *Rosen*, 117 Ohio St.3d 241, 2008-Ohio-853 at ¶ 31.  Further, R.C. 3127.15(A) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B).

*Standard of Review*

**{¶20}** An appellate court conducts a *de novo* review of a trial court's determination regarding the existence of subject matter jurisdiction, whether the trial court has or lacks jurisdiction in the first place, because such determination is a matter of law. *See Johnson v. Kelly*, 10th Dist. Franklin No. 14AP–1037, 2015-Ohio-2666, ¶ 13; *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-

Ohio-6226, ¶ 26; *Compare*, *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, ¶ 35 (clarifying that "[a]lthough a *de novo* standard of review is applied when determining the issue of the trial court's subject matter jurisdiction, once the subject matter jurisdiction is established, a trial court's decision as to whether to exercise its jurisdiction pursuant to the UCCJEA should only be reversed if the court committed an abuse of discretion"); *see e.g.*, R.C. 3127.21 (granting an Ohio court the authority to decline jurisdiction upon its determination that a court of another state is a more convenient forum).

*Home State*

{¶21} At issue in this case is whether the trial court erred in determining that Michigan, as opposed to Ohio, was the children's "home state" for purposes of vesting initial child-custody jurisdiction at the time Mother filed the custody proceeding in Ohio. As reflected in R.C. 3127.15(A), the UCCJEA gives jurisdictional priority to the home state. *Rosen*, 117 Ohio St.3d 241, 2008-Ohio-853 at ¶ 21. For these purposes, "home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding." R.C.

3127.01(B)(7). The statute further provides that "[a] period of temporary absence of the child or parent counts as part of the six-month period." *Id.*[5]

*Evidence Adduced at the Hearing*

**{¶22}** The following evidence was presented at the hearing on jurisdiction conducted by the trial court. It is undisputed by the parties that they maintained a long-term relationship in the Southgate, Michigan area during which C.K. and L.K. were born, and that their relationship ended in January of 2017. The parties informally adopted a parenting time schedule after their separation.

**{¶23}** Mother testified that in May of 2017 she moved to Auglaize County, Ohio, to live with her new boyfriend. Mother submitted as an exhibit a residential lease agreement for a home in Wapakoneta, Ohio, which she entered into as a tenant commencing May 27, 2017. C.K. and L.K. lived with Mother at the Ohio residence when she exercised her parenting time with them. Mother presented testimony from her boyfriend and landlord indicating that the children had lived at the Ohio residence since May of 2017. Mother also testified that she continued to live at the Ohio residence at the time of the hearing.

**{¶24}** Despite moving her residence to Ohio, Mother continued to be employed with the same employer in Michigan, and as a result she commuted daily,

---

[5] Although R.C. 3127.01(B)(7) refers to "at least six consecutive months," in *Rosen*, the Supreme Court of Ohio interpreted "home state" to mean the state in which the child lived "within" six months prior to the commencement of proceedings. *See*, *Rosen* at ¶ 35-42.

Monday through Friday, from Ohio to Michigan. C.K. and L.K. maintained their enrollment at a local daycare and public school in Michigan while Mother was at work and travelled with her to and from Ohio and Michigan. With respect to their parenting time arrangement, Mother maintained that Father exercised parenting time with the children every other weekend and the following Monday. Thus, Mother testified that the children spent three nights with Father during every two week period.

{¶25} However, Father disputed Mother's characterization of the parties' parenting time arrangement. Specifically, Father testified that he exercised parenting time with the children *every* Monday, Tuesday, and Wednesday morning. Father explained that on Wednesday mornings he took the children to their daycare and school. Mother then picked the children up on Wednesdays after she left work and exercised parenting time with the children every Wednesday evening, Thursday, and Friday. Father confirmed Mother's testimony that the parties alternated parenting time every other weekend, which included Friday evening, Saturday, and Sunday. Father's testimony in this regard was supported by the testimony of Paternal Grandmother, who lived near Father in Michigan and re-iterated Father's description of the parties' parenting time schedule. Paternal Grandmother explained that she was aware of the parties' parenting time

arrangement because she often assisted Father *and* Mother by picking the children up from school and daycare on their respective parenting time days.

{¶26} Father and Paternal Grandmother both testified that this parenting time arrangement was in place until late January 2018. At this time, Father received a text from Mother indicating that the children would no longer be attending school and daycare in Michigan, that they would be permanently living with Mother in Ohio, and that they were not coming back to Michigan until a determination was made by a court in a custody proceeding, which she had simultaneously initiated in Ohio.

{¶27} Father stated that he did not know that Mother had moved to Ohio in May 2017, but he was aware that Mother's boyfriend lived in Ohio. He testified that Mother had told him that she was living with her mother—i.e., the children's Maternal Grandmother, who lived two miles from Father in Michigan. Father explained that the way in which they had fashioned their parenting time did not require he and Mother to have much interaction with one another. Father stated that in addition to attending school and daycare in Michigan until January 2018, the children were still patients of their dentist and doctors in Michigan until that time. Father recalled that years prior he had filed a custody proceeding in Michigan regarding the older child, before the birth of the second child, when he and Mother were separated. Father claimed at that time Mother had kept the child from him.

He explained that he later dismissed the custody case after he and Mother rekindled their relationship.

**{¶28}** Paternal Grandmother also testified to her belief that Mother was living with Maternal Grandmother in Michigan until January 2018. Paternal Grandmother testified that she was supposed to pick up the children from school and daycare on the day Father received the text message from Mother indicating that the children would not be returning to Michigan until the Ohio Court resolved the custody matter. Paternal Grandmother recalled that the news conveyed by Mother's text blindsided the family and stated that it "was a very devastating day for everybody." (Tr. at 55). Notably, Mother maintained that she was transparent with her plans to relocate herself and the children to Ohio, and claimed that Father knew she had been living in Ohio since May 2017.

*Trial Court's Decision*

**{¶29}** After hearing the evidence presented at the hearing on jurisdiction, the trial court made the following findings:

> **Based upon the testimony that was adduced at the hearing, the Court does not believe the testimony of the natural mother that she had informed the natural father or his family of her intent to have the children reside in Ohio. The Court believes that the natural mother was deceptive with regard to what she was doing with the children in order to invoke the jurisdiction of this Court and to proceed forward with a custody action in this matter. During part of the six months immediately preceding the filing of this action, the mother continued her employment in Michigan and continued to have the children educated in Michigan.**

\* \* \*

**Accordingly, this Court finds that Michigan is the home state of these children and that the proceedings should go forward in the State of Michigan.**

(Doc. No. 17).

*Discussion*

**{¶30}** On appeal, Mother claims that the trial court erred in determining that the children's home state was Michigan under R.C. 3127.01(B)(7) at the time she filed the custody proceeding in Ohio. Mother argues that she presented sufficient evidence to demonstrate that the children had *lived* with her in Ohio for more than the requisite six-month period to invoke jurisdiction in an Ohio Court. *See* R.C. 3127.01(B)(7) (defining a home state as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding \* \* \*").

**{¶31}** The undisputed evidence at the hearing revealed that the children were born in Michigan and continued to live there until Mother moved to Ohio in May 2017. Furthermore, it is undisputed by the parties that since the children's births Michigan had been their home state. On appeal, Mother appears to contend that because children lived in Ohio *for part of the time* during the eight-month period, from May 2017 to January 2018, Michigan somehow lost its home-state status

during that timeframe. Notably, this argument belies the fact that the children also *continued to live* in Michigan for the remainder of the time with Father.

{¶32} As previously mentioned, " [t]here can only be one home state and therefore, competition for jurisdiction between the states is avoided." *In re B.P.*, 2011-Ohio-2334 at ¶ 37. The question therefore becomes whether the children's part-time living arrangements with Mother in Ohio for a eight-month period before Mother commenced the custody proceeding in Ohio operated to divest Michigan's status as the children's home state.[6] We conclude that the Ohio and Michigan statutory provisions, which codify the manner in which jurisdiction is vested in a court to make an initial-custody determination under the UCCJEA, both support the trial court's conclusion that Michigan was the children's home state at the time Mother filed the custody action in Ohio.

{¶33} Under both R.C. 3127.0.15(A)(1) and M.C.L.A. 722.1201, Sec. 201(1)(a), which employ identical language, jurisdiction to make an initial-custody determination is invoked when, "[t]his state [—i.e. Ohio or Michigan] is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the

---

[6] We note that although the parties dispute the amount of time the children continued to "live" in Michigan after May 2017, the statute does not appear to consider a quantitative assessment of the amount of time the children lived in the home state within the six-month look back period.

proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."

**{¶34}** At the outset, we note that Mother has not cited to nor has this Court found any authority supporting Mother's proposition that Michigan lost its home-state status when the children began living with her in Ohio part of the time, but continued to live the remaining amount of the time with Father in Michigan. To the contrary, under R.C. 3127.01(B)(7) a child's "temporary absence" from the home state within the six-month statutory period is counted as the child's time in the existing home state.[7] *See* 3127.01(B)(7)(stating a period of temporary absence of the child or parent counts as part of the six-months); *see also*, *Anderson v. Anderson*, No. 2016-CA-001502-ME, *3 (Ky. Ct. App. Apr. 14, 2017)(construing Kentucky's jurisdictional provision under the UCCJEA, which is similar to Ohio's and Michigan's, and observing that the child's time away from the home state as "[b]eing a temporary absence rather than a permanent placement, [thus] the six-month clock never began to run").

**{¶35}** To elucidate further, in *Thomas v. Thomas*, the Fifth Appellate District examined this concept of a "temporary absence" in determining home-state jurisdiction under the UCCJEA. *Thomas v. Thomas*, 5th Dist. Richland No. 17CA04, 2017-Ohio-8710. In that case, the child at issue was born in Ohio in 2011

---

[7] The statute does not define the meaning of a "temporary absence."

where mother and father lived. *Id*. at ¶ 39. In 2013, mother took the child without father's permission to Florida. *Id*. Father remained in Ohio. Father filed for divorce in Ohio after mother and child lived in Florida for a ten-month period. Mother claimed that Florida was child's home state and argued that the Ohio proceeding should be dismissed. Father contended that Ohio remained the child's home state.

**{¶36}** The trial court determined the approximate ten-month "temporary absence" of mother and the child from Ohio should be counted as part of the six-month period immediately preceding the commencement of the child custody proceeding, thereby giving Ohio home-state jurisdiction. *Id*. at ¶ 40. The appellate court affirmed the trial court's conclusion that Ohio was the child's home state and found that the facts adduced at the evidentiary hearing supported the trial court's determination that "when Mother went to Florida with [the child], it was questionable whether the move was intended to be permanent." *Id*. at ¶ 41. The appellate court highlighted the fact that mother told father that they would only be in Florida for a few months; mother did not have independent housing in Florida; mother did not take any steps to enroll the child in school while in Florida; and when mother returned to Ohio it was only to move her belongings from father's home and afterwards she abruptly stopped communicating with father. *Id*.

**{¶37}** In the case *sub judice*, the children *continued to live in the home state with Father* during the eight-month period Mother lived in Ohio prior to filing the

custody proceeding in the trial court. Thus, we question whether the "temporary absence" doctrine even applies as the children were never "absent" from the home state as that term is used in R.C. 3127.01(B)(7) and construed in the case authority cited above.

{¶38} Nevertheless, there are other facts adduced at the evidentiary hearing supporting the trial court's determination that Michigan was the children's home state at the time Mother filed the custody action in Ohio. Specifically, that Mother was not forthcoming about the nature of her move to Ohio by telling Father and Paternal Grandmother she lived with her mother in Michigan; that Mother continued to work for her employer in Michigan and continued the enrollment of the children in their Michigan school and daycare even after she moved to Ohio; and that once Mother believed she had satisfied the residency requirement for Ohio, she filed a custody proceeding in an Ohio Court and abruptly stopped facilitating Father's parenting time through their informal arrangement that they both had been adhering to for the prior eight months.[8] Similar to the *Thomas* case, all of these facts legitimately cast doubt on the permanency of Mother's move to Ohio—especially

---

[8] We note that insofar as the evidence in the record can be construed to demonstrate that the parties exercised "visitation" with the children while they were in each parent's care, courts in other jurisdictions have examined this question have concluded temporary absences include parental visitations. *Moyne v. Moyne*, No. A13-2077, at *4 (Minn. Ct. App. May 12, 2014)(characterizing the children's five-month stay with mother in France as "visitation," despite mother's intent to relocate to France, and finding that the period qualifies as a temporary absence from the children's home state, Minnesota; *see also*, *In re Marriage of McDermott*, 175 Wash.App. 467, 487, 307 P.3d 717, 727 (2013); *Sajjad v. Cheema*, 428 N.J. Super. 160, 173, 51 A.3d 146, 154 (App. Div. 2012); *In re Lewin*, 149 S.W.3d 727, 739 (Tex.App.2004)(discussing court-ordered visitation as temporary absences from the home state).

insofar as she communicated her intentions to Father and his family.

**{¶39}** We recognize that Mother disputes Father's contention that she was not transparent with her plans to relocate to Ohio. However, we defer to the trial court, as the trier of fact, in its credibility determinations of the witnesses at the hearing and, in this case the trial court simply did not find Mother's testimony credible.

**{¶40}** In any event, even if the trial court had determined that Ohio had home state jurisdiction, the trial court nevertheless would have had the discretion to decline its jurisdiction by either: (1) *sua sponte* concluding that Michigan is a more convenient forum under R.C. 3127.21; or (2) concluding that Mother engaged in "unjustifiable conduct" under R.C. 3127.22.[9]

**{¶41}** Accordingly, we conclude that the under R.C. 3127.15(A)(1) and R.C. 3127.01(B)(7) Michigan was the children's home state at the time Mother filed the custody proceeding in Ohio. Therefore, we also conclude that the trial court did not err when it determined that it did not have jurisdiction to proceed on Mother's complaint, and that Mother's complaint should be dismissed. Mother's first assignment of error is overruled.

---

[9] *See* R.C. 3127.22 (defining "unjustifiable conduct" as conduct by a parent or that parent's surrogate that attempts to create jurisdiction in this state by removing the child from the child's home state, secreting the child, retaining the child, or restraining or otherwise preventing the child from returning to the child's home state in order to prevent the other parent from commencing a child custody proceeding in the child's home state).

{¶42} For all these reasons, the judgments of the trial court are affirmed.

*Judgments Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**