[Cite as *Starr v. Statler-Houchin*, 2024-Ohio-4628.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

JACK B. STARR,

    PETITIONER-APPELLEE,

  v.

BRENAH STATLER-HOUCHIN,

    PETITIONER-APPELLANT.

CASE NO. 4-23-18

O P I N I O N

Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 34374

**Judgment Affirmed**

Date of Decision:  September 23, 2024

APPEARANCES:

    *Timothy C. Holtsberry* **for Appellant**

    *Laurel A. Kendall* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Petitioner-appellant, Brenah Statler-Houchin ("Statler-Houchin"), appeals the November 9, 2022 and January 19, 2023 (interlocutory) decisions of the Defiance County Court of Common Pleas, Juvenile Division, denying her motions to dismiss and the trial court's October 12, 2023 decision reallocating parental rights and responsibilities and designating petitioner-appellee, Jack B. Starr ("Starr"), as the residential parent and legal custodian of the parties' minor child. For the reasons that follow, we affirm.

{¶2} Starr and Statler-Houchin, who were never married, had one child, J.S. (born in 2019), during their relationship. On June 12, 2020, Starr and Statler-Houchin filed a joint petition to establish their parental rights and responsibilities of J.S. Starr and Statler-Houchin entered into a shared-parenting plan by consent entry on July 1, 2020. Correspondingly, the trial court issued a shared-parenting decree in which it ordered Starr and Statler-Houchin to share legal and residential custody of J.S.

{¶3} However, on March 8, 2022, Starr filed a motion to reallocate their parental rights and responsibilities in which he requested the trial court to designate him as the residential parent and legal custodian of J.S. That same day, Starr filed a motion requesting that the trial court cite Statler-Houchin into court to show cause why she should not be found in contempt for violating the parties' shared-parenting

plan.  Starr also filed a motion requesting that the trial court appoint a guardian ad litem ("GAL").  The trial court's magistrate appointed a GAL.

**{¶4}** On May 20, 2022, Statler-Houchin filed a motion to dismiss, arguing that the trial court "lacks jurisdiction as the mother and child have been residents of the State of Indiana since before and at the initiation of this case."  (Doc. No. 23).  Starr filed a memorandum in opposition to Statler-Houchin's motion to dismiss on June 8, 2022.  Following a hearing on June 16, 2022, the trial court's magistrate denied Statler-Houchin's motion to dismiss after concluding that J.S. "lived in Defiance, Ohio within six months prior to commencement of legal proceedings and Ohio had home state jurisdiction pursuant to R.C. 3127.15 and the [Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")]."  (Doc. No. 28).  The trial court's magistrate further reasoned that Statler-Houchin "never initiated any legal proceedings in the State of Indiana . . . and did not object to jurisdiction in this matter until [Starr] re-opened the case requesting modification of custody."  (*Id.*).

**{¶5}** Statler-Houchin filed her objections to the magistrate's decision on June 30, 2022.  Starr filed a memorandum in opposition to Statler-Houchin's objections to the magistrate's decision on October 6, 2022.  On October 14, 2022, Statler-Houchin filed her reply to Starr's memorandum in opposition to her objections to the magistrate's decision.  On November 9, 2022, the trial court overruled Statler-Houchin's objections to the magistrate's decision denying her motion to dismiss.

{¶6} Statler-Houchin filed a notice of appeal from the trial court's decision overruling her objections to the magistrate's decision denying her motion to dismiss on November 29, 2022. On December 15, 2022, this court dismissed Statler-Houchin's appeal after concluding that we lacked jurisdiction to consider it for lack of a final, appealable order.

{¶7} On December 22, 2022, Starr dismissed (without prejudice) his contempt citation against Statler-Houchin for violating the parties' shared-parenting plan.

{¶8} On January 9, 2023, Statler-Houchin once again filed her motion to dismiss in which she again argued that the trial court "lacks jurisdiction as the mother and child have been residents of the State of Indiana since before and at the initiation of this case." (Doc. No. 55). After reasoning that her "motion essentially raises the same issues as were previously addressed by [the] Court in the Judgment Entry filed on November 9, 2022," the trial court denied Statler-Houchin's motion to dismiss. (Doc. No. 56).

{¶9} The GAL filed a report on June 30, 2023 in which he recommended that Starr "be named residential parent and legal custodian of [J.S.]." (Doc. No. 65).

{¶10} After a hearing on July 12, 2023, the trial court's magistrate on August 14, 2023 concluded that, "because the parents live an hour away from each other and [J.S.] will begin attending preschool," it is in J.S.'s best interest that Starr "be named the residential parent of [J.S.] for school enrollment and attendance

purposes." (Doc. No. 71). Even though the trial court issued a decision adopting the magistrate's decision on August 28, 2023, Statler-Houchin filed her objections to the magistrate's decision that same day. After being granted leave, Starr filed (instanter) a memorandum in opposition to Statler-Houchin's objections to the magistrate's decision on September 18, 2023. Nevertheless, because Statler-Houchin failed to file a transcript of the July 12, 2023 proceedings before the magistrate with the trial court, the trial court, in its independent review of the matter, overruled Statler-Houchin's objections to the magistrate's decision on October 12, 2023. (Doc. No. 86).

{¶11} Statler-Houchin filed her notice of appeal on November 7, 2023. She raises three assignments of error for our review.

## First Assignment of Error

**An Ohio Juvenile Court Cannot Acquire Jurisdiction Of A Child Custody Case Through Waiver Or Consent When The Mother And Child Are Residents Of Another State**

## Second Assignment of Error

**Evidence Was Insufficient To Find That The Trial Court Has Jurisdiction Over A Child Custody Case When The Subject Child And Its Mother Have Been Residents Of The State Of Indiana For The Child's Entire Life**

{¶12} In her first and second assignments of error, Statler-Houchin challenges the jurisdiction of the trial court to consider this case. Specifically, Statler-Houchin argues that the trial court did not have subject-matter jurisdiction

over this case since she and J.S. "had been exclusively living in Indiana for approximately two months when the consent judgment entry was filed in July 2020." (Appellant's Reply Brief at 4).

*Standard of Review*

{¶13} Generally, "[a]n appellate court conducts a de novo review of a trial court's determination regarding the existence of subject matter jurisdiction, whether the trial court has or lacks jurisdiction in the first place, because such determination is a matter of law." *Plaza v. Kind*, 2018-Ohio-5215, ¶ 20 (3d Dist.). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 2013-Ohio-2149, ¶ 25 (3d Dist.).

{¶14} However, even though "a de novo standard of review is applied when determining the issue of the trial court's subject matter jurisdiction, once the subject matter jurisdiction is established, a trial court's decision as to whether to exercise its jurisdiction pursuant to the UCCJEA should only be reversed if the court committed an abuse of discretion." *Martindale v. Martindale*, 2016-Ohio-524, ¶ 35 (4th Dist.). *See also* R.C. 3217.21 (granting Ohio courts the discretion to decline jurisdiction when the court determines that a court of another state is a more convenient forum). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶15}** "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 19. "'Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time.'" *In re R.M.*, 2013-Ohio-3588, ¶ 77 (4th Dist.), quoting *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11.

**{¶16}** "R.C. 2151.23(A)(2) provides that the juvenile court has exclusive original jurisdiction to determine custody of a child who is not a ward of a court of this state." *Id.* at ¶ 78. "R.C. 2151.23(F)(1) further provides, however, that a juvenile court must exercise that jurisdiction in accordance with R.C. Chapter 3127," the UCCJEA. *Id.*, citing *Rosen v. Celebrezze*, 2008-Ohio-853, ¶ 46 (explaining that, even though Ohio's statutory scheme provides a juvenile court with "basic statutory jurisdiction to determine custody matters[,] a more specific statute like R.C. 3127.15 [may] patently and unambiguously divest[ ] the court of such jurisdiction").

**{¶17}** "The UCCJEA defines a trial court's subject-matter jurisdiction to issue a child custody determination." *Id.* at ¶ 79, citing *Rosen* at ¶ 44 (stating that an erroneous exercise of jurisdiction under the UCCJEA "is not a mere error in the exercise of jurisdiction; it is a defect in the Ohio court's subject-matter

jurisdiction"). "Thus, claimed errors in exercising jurisdiction under the UCCJEA 'cannot be waived.'" *Id.*, quoting *Rosen* at ¶ 45.

{¶18} R.C. 3127.15(A) sets forth "the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B). The statute provides, in its relevant part, as follows:

(A) Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 3127.21 or 3127.22 of the Revised Code or a similar statute enacted by another state.

(4) No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

R.C. 3127.15(A).[1]

{¶19} "R.C. 3127.15(A) thus provides a court with four types of jurisdiction to make the initial determination in a child custody proceeding: (1) home-state jurisdiction, (2) significant-connection jurisdiction, (3) jurisdiction because of declination of jurisdiction, and (4) default jurisdiction." *In re R.M.* at ¶ 81. "The primary purpose of the UCCJEA is '"to avoid jurisdictional competition and conflict with courts of other jurisdictions" in custody matters.'" *Plaza*, 2018-Ohio-5215, at ¶ 17 (3d Dist.), quoting *Rosen* at ¶ 20, quoting *In re Palmer*, 12 Ohio St.3d 194, 196 (1984). Therefore, the home state is given jurisdictional priority and exclusive continuing jurisdiction under the UCCJEA. *In re R.M.* at ¶ 81.

{¶20} Based on our review of the record, we conclude that the trial court did not abuse its discretion by electing to exercise jurisdiction in this case because it had subject-matter jurisdiction under the UCCJEA. That is, the trial court possessed home-state jurisdiction under R.C. 3127.15(A)(1) since Starr and Statler-Houchin asserted that Ohio was J.S.'s home state "for more than six (6) months immediately preceding the filing" of this case when they filed their initial petition to establish parental rights and responsibilities. (Doc. No. 1).

---

[1] A "'[c]hild custody proceeding' means a proceeding in which legal custody, physical custody, parenting time, or visitation with respect to a child is an issue. [It] may include a proceeding for * * * neglect, abuse, [or] dependency * * * ." R.C. 3217.01(A)(3).

**{¶21}** "While parties to a case may concede facts that, if believed, grant a trial court jurisdiction, they cannot create subject-matter jurisdiction by any such concession, and a court cannot be bound by 'any agreement, stipulation, or concession from the parties as to what the law requires.'" *Hignight v. Knepp*, 2024-Ohio-1708, ¶ 18 (6th Dist.), quoting *State ex rel. Steffen v. Myers*, 2015-Ohio-2005, ¶ 16. *See also Mullinix v. Mullinix*, 2023-Ohio-1053, ¶ 20 (10th Dist.) (acknowledging that "[p]arties to an action may not confer jurisdiction on a court by mutual consent" but may "stipulate to facts that are sufficient to confer jurisdiction on the court").

> Under, R.C. 3127.01(B)(1) defines "home state" as
>
> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding and, if a child is less than six months old, the state in which the child lived from birth with any of them. A period of temporary absence of any of them is counted as part of the six-month or other period.

The determination of whether Ohio is a child's home state requires the trial "court to decide whether the facts presented by the parties fit the definition of 'home state' in R.C. 3127.01(B)(7) . . . ." *Hignight* at ¶ 19. Importantly, such determination "is a legal issue that the court must decide—not a factual issue" to which the parties can stipulate. *Id.*

**{¶22}** Likewise, the doctrine of "'[j]udicial estoppel precludes a party from taking a position inconsistent with a position that it successfully and unequivocally

asserted in a prior judicial proceeding.'" *Id.* at ¶ 20, quoting *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 29. "It is intended to prevent a party '"from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment."'" *Id.*, quoting *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998). The doctrine of judicial estoppel "is an equitable doctrine that a court has discretion to invoke." *Id.*, citing *Independence* at ¶ 29.

{¶23} Here, Statler-Houchin is judicially estopped from raising her jurisdictional argument since she conceded the facts underlying the legal conclusion that Ohio was J.S.'s home state at the time she and Starr commenced this matter. That is, since Statler-Houchin conceded that J.S. lived in Ohio for at least six months immediately preceding the commencement of this case—a *fact* underlying the *legal conclusion* that Ohio is the home state—Statler-Houchin cannot allege that the trial court was without jurisdiction to consider the matter. *Id.* at ¶ 19 (distinguishing that the concession to "a legal conclusion (i.e., that Ohio was the home state), which is not binding on [the trial court,] cannot, by itself, give [the trial court] jurisdiction that does not otherwise exist" but that a concession "that the child[] lived in Ohio at the time of filing" will resolve any jurisdictional dispute).

{¶24} Indeed, it is evident that the trial court relied on Starr and Statler-Houchin's representation regarding J.S.'s residency at the time they filed their joint

petition to establish their parental rights and responsibilities of J.S. *Compare id.* at ¶ 21 (analyzing that there was "no evidence that Hignight's former attorney told the juvenile court that Ohio was the children's home state with some nefarious intent, or that [the trial court] relied on the former attorney's representation to determine that [it] had jurisdiction"). Therefore, the trial court possessed home-state jurisdiction under R.C. 3127.15(A)(1). Accordingly, the trial court did not abuse its discretion by exercising its jurisdiction under the UCCJEA.

**{¶25}** Furthermore, to the extent that Statler-Houchin challenges the trial court's continuing jurisdiction to resolve Starr's motion to reallocate their parental rights and responsibilities, we likewise reject that argument. Importantly, the parties' shared-parenting plan was adopted under R.C. 3109.04(D)(1)(a)(i), which relates to situations in which "both parents jointly make the request in their pleading or jointly file the motion and also jointly file the plan." At the same time, the trial court issued a shared-parenting decree awarding residential and legal custody to Starr *and* Statler-Houchin. Again, it is uncontroverted that Statler-Houchin *consented* to the trial court's initial shared-parenting plan and decree. *See LaCourse v. LaCourse*, 2023-Ohio-972, ¶ 15 (6th Dist.).

**{¶26}** Thereafter, Starr filed a motion requesting that the trial court modify that custody order by issuing an "an Order *modifying*, suspending, or supervising the parenting time for [Statler-Houchin] until recommendations can be made about further contact, as such a change is in the minor child's best interest." (Emphasis

added.) (Doc. No. 6). Importantly, "[a]fter the court has journalized an initial decree allocating parental rights and responsibilities, the court retains jurisdiction to modify the decree." *Hanna v. Hanna*, 2008-Ohio-3523, ¶ 10 (10th Dist.). Therefore, since Starr was seeking modification of the initial shared-parenting decree, Statler-Houchin's argument challenging the continuing jurisdiction of the trial court is specious.

{¶27} Statler-Houchin's first and second assignments of error are overruled.

**Third Assignment of Error**

**Splitting Of Siblings Is Not Favored By Ohio Law**

{¶28} In her third assignment of error, Statler-Houchin challenges the trial court's reallocation of parental rights and responsibilities. In particular, Statler-Houchin argues that the trial court abused its discretion by designating Starr as the residential parent and legal custodian of J.S. because such designation resulted in "splitting" J.S. from attending school with his half-sister. (Appellant's Brief at 11).

*Standard of Review*

{¶29} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 2014-Ohio-2577, ¶ 26 (3d Dist.), quoting *Walker v. Walker*, 2013-Ohio-1496, ¶ 46 (3d Dist.). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'"" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 2008-Ohio-

5538, ¶ 25 (3d Dist.) and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶30}** A juvenile court is to exercise its jurisdiction in a child-custody matter in accordance with R.C. 3109.04. R.C. 2151.23(F)(1). "R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child." *Bruns v. Green*, 2020-Ohio-4787, ¶ 8. *See also Fisher v. Hasenjager*, 2007-Ohio-5589, ¶ 24 (noting that a court "allocates parental rights and responsibilities when it issues a shared-parenting order"). That statute "provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C. 3109.04(A)(2))." *Id.* When considering the parental rights and responsibilities of unmarried parents, the statute directs that

> [a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

R.C. 3109.042(A). "In custody disputes between unmarried parents, 'the court must determine custody based on the best interests of the child pursuant to R.C. 3109.04(B)(1).'" *In re Fair*, 2009-Ohio-683, ¶ 39 (11th Dist.), quoting *In re Knight*, 2003-Ohio-7222, ¶ 16 (11th Dist.).

{¶31} "R.C. 3109.04 also sets forth the procedures to be followed in the event that either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan." *Bruns* at ¶ 9. *See also Fisher* at ¶ 11 (addressing that "[o]nce a shared-parenting decree has issued, R.C. 3109.04(E) governs modification of the decree"). "Under R.C. 3109.04(E)(1)(a), a trial court may modify a decree that allocates parental rights and responsibilities for the care of children, including shared-parenting decrees." *Bruns* at ¶ 10. That statute provides, in its relevant part that

> [t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> . . .
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

-15-

R.C. 3109.04(E)(1)(a).

**{¶32}** When "allocating the parental rights and responsibilities, the court 'shall take into account that which would be in the best interest of the child[ ].'" *August v. August*, 2014-Ohio-3986, ¶ 22 (3d Dist.), quoting R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) "spell[s] out ten factors that the court shall consider to determine the best interest of the child . . . ." *Id.* at ¶ 23.

> In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companion rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1). "Additionally, when determining whether shared parenting is in the best interest of the child, the trial court must consider R.C. 3109.04(F)(2) . . . ." *Suever v. Schmidt*, 2022-Ohio-4451, ¶ 20 (3d Dist.). R.C. 3109.04(F)(2) provides that

the court shall consider all relevant factors, including, but not limited to the factors enumerated in [R.C. 3109.04(F)(1)], and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

**{¶33}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29 (3d Dist.), quoting *Brammer v. Brammer*, 2013-Ohio-2843, ¶ 41 (3d Dist.). "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29. "'[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors

listed in R.C. 3109.04(F)(1).'" *Brammer v. Meachem*, 2011-Ohio-519, ¶ 32 (3d Dist.).

**{¶34}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 2011-Ohio-2847, ¶ 20 (3d Dist.). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark v. Clark*, 2007-Ohio-5771, ¶ 23 (3d Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984). Importantly, "[t]he best interest determination focuses on the child, not the parent." *B.S. v. M.M.*, 2021-Ohio-176, ¶ 29 (5th Dist.).

**{¶35}** In this case, Statler-Houchin argues that the trial court abused its discretion by modifying the shared-parenting decree and by concluding that it is in J.S.'s best interest for Starr to have residential and legal custody of J.S. Essentially, Statler-Houchin asserts that the trial court's custody decision (based on the factors under R.C. 3109.04(F)) is not supported by a substantial amount of competent, credible evidence. However, for the reasons that follow, we conclude that the trial court did not abuse its discretion by modifying Starr and Statler-Houchin's shared-parenting decree and by designating Starr as the residential parent and legal custodian of J.S.

**{¶36}** Relevantly, the Supreme Court of Ohio distinguished that "R.C. 3109.04(E)(1)(a) allows for modification of a shared-parenting *decree*," while "R.C. 3109.04(E)(2)(a) and (b) allow for the modification of the terms of a *shared-parenting plan*." (Emphasis in original.) *Bruns*, 2020-Ohio-4787, at ¶ 11. *See also Fisher*, 2007-Ohio-5589, at ¶ 31 (noting that "[a] plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree"). In particular, the court highlighted that R.C. 3109.04(E)(2)(a) "provides that when both parents subject to a shared-parenting decree have jointly agreed on certain modifications to the terms of the shared-parenting plan, the court may make those modifications if it determines that they are in the best interest of the child." *Bruns* at ¶ 11. It further highlighted that R.C. 3109.04(E)(2)(b) "authorizes the trial court—on its own initiative or at the request of one or both parents—to modify the terms of the shared-parenting plan when modification is found to be in the best interest of the child." *Id.*

**{¶37}** "In contrast to subsection (E)(1)(a), which outlines how to modify a custody decree, and subsections (E)(2)(a) and (b), which outline how to modify the terms of a shared-parenting plan, subsection (E)(2)(c) provides the procedures for *terminating* a shared-parenting decree that includes a shared-parenting plan." (Emphasis in original.) *Id.* at ¶ 12. *See also Fisher* at ¶ 31 (stressing that "the designation of residential parent or legal custodian cannot be a term of shared-parenting plan, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b)").

R.C. 3109.04(E)(2)(c) provides that the trial court "may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." In the event that the trial court terminates a shared-parenting decree, R.C. 3109.04(E)(2)(d) provides:

> "Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made."

R.C. 3109.04(E)(2)(d).

{¶38} Since Starr sought to *modify* the shared-parenting decree, such modification

> may only be made "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to shared parenting decree, and that the modification is necessary to serve the best interest of the child."

*Fisher* at ¶ 33, quoting R.C. 3109.04(E)(1)(a). *See also Bruns* at ¶ 19 (stressing that a "modification of the designation of residential parent and legal custodian in a shared-parenting plan is a modification of the decree allocating parental rights and responsibilities . . . requires a change-in-circumstances finding under R.C. 3109.04(E)(1)(a)). "This is a high standard, as a 'change' must have occurred in the

-21-

life of the child or the parent before the court will consider whether the current designation of residential parent and legal custodian should be altered." *Fisher* at ¶ 33.

{¶39} In this case, the trial court's magistrate reallocated the parties' rights and responsibilities by modifying the shared-parenting decree and designating Starr as "the residential parent for school enrollment and attendance purposes." (Doc. No. 71). In reaching its determination, the trial court's magistrate analyzed that, under "R.C. 3109.04(E)(2)(b), the Court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree [so long as] the modification is in the best interest of the children." (*Id.*). Thus, in reaching the conclusion that it is in J.S.'s best interest that Starr have residential custody of J.S., the trial court's magistrate considered the factors under R.C. 3109.04.

{¶40} In addressing the best-interest factors under R.C. 3109.04(F)(1), the trial court's magistrate found: R.C. 3109.04(F)(1)(a), "both parents are requesting to be named the residential parent for school district and enrollment purposes of the minor child"; R.C. 3109.04(F)(1)(b), no in camera interview was conducted; R.C. 3109.04(F)(1)(c), J.S. "has a loving relationship with both parents,"  is "well supported in the Defiance area" due to "an appropriate and bonded relationship with [Starr's] girlfriend and his parents [as well as Starr's] siblings that reside in the area [so J.S.] has contact with several other children on a regular basis," and has "a

normal and appropriate relationship with his half-sister" that resides with Statler-Houchin; R.C. 3109.04(F)(1)(d), J.S. "has adjusted well to the Defiance community" and has "a stable and secure home in Defiance," while Statler-Houchin's "living situation . . . could change at any time which could force [her] to move to a new residence and children to a new school"; R.C. 3109.04(F)(1)(e), Statler-Houchin "is undergoing counseling" for "PTSD, anxiety, and depression," while Starr does not suffer from a mental or physical disorder; R.C. 3109.04(F)(1)(f), "both parties have been following court orders regarding parenting time"; R.C. 3109.04(F)(1)(g), there is no child-support order; R.C. 3109.04(F)(1)(h), neither party has been convicted of any crime listed in the statute; R.C. 3109.04(F)(1)(i), while there was evidence presented "that there was some time when [Statler-Houchin] prevented [Starr] from exercising his parenting time initially due to allegations of concern about his girlfriend's mental health, and after that she told [Starr] that she did not have to follow the court order," there was no evidence "presented that [Starr] had ever withheld parenting time from [Statler-Houchin]"; and R.C. 3109.04(F)(1)(j), Statler-Houchin currently resides in Fort Wayne, Indiana and [Starr] lives in Defiance, Ohio." (*Id.*).

{¶41} Moreover, the trial court's magistrate considered the factors under R.C. 3109.04(F)(2) in its conclusion that it is in J.S.'s best interest for Starr to have residential custody of J.S. Specifically, the trial court's magistrate found that the geographic proximity of the parents to each other presented impediments and that

-23-

the GAL recommended that Starr "be named the residential parent for school purposes." (*Id.*). *See* R.C. 3109.04(F)(2)(d), (e).

**{¶42}** In its August 28, 2023 independent review of the magistrate's decision, the trial court adopted the magistrate's decision designating Starr as J.S.'s residential parent and legal custodian after determining that it is "in the best interest of [J.S.]" (Doc. No. 72).

**{¶43}** Even though the trial court did not explicitly address whether a change in circumstances occurred, we are able to discern from the record that a change in circumstances occurred as required by R.C. 3109.04(E)(1)(a). *See Haldy v. Hoeffel*, 2020-Ohio-975, ¶ 16 (3d Dist.). Specifically, the trial court's magistrate assessed that the purpose of the modification was for J.S.'s enrollment in school. To that finding, this court has concluded that a child's enrollment in school can constitute a change in circumstances under R.C. 3109.04(E)(1)(a). *Accord In re Slavey*, 1998 WL 546580, *2 (3d Dist. Aug. 21, 1998). *See also Haldy* at ¶ 16. Therefore, we conclude that the trial court satisfied the change-in-circumstances finding under R.C. 3109.04(E)(1)(a).

**{¶44}** Moreover, we conclude that the trial court properly considered the best-interest factors. Challenging the trial court's best-interest determination, Statler-Houchin argues that the trial court should have designated her as J.S.'s residential parent and legal custodian so that J.S. could attend school with his half sibling. "While it is true that split-sibling custody awards are not favored, neither

-24-

are they barred." *Shull v. Shull*, 1990 WL 115983, *2 (2d Dist. July 31, 1990). Instead, "[t]he decision to award the custody of siblings to different parents must, like all custody determinations, be based upon the best interests of the child. R.C. 3109.04." *Id.*

**{¶45}** Based on our review of the record that is properly before this court, we conclude that the trial court did not abuse its discretion by concluding that it is in J.S.'s best interest for Starr to have residential and legal custody of J.S. Typically, "[w]hen reviewing a trial court's best interests analysis, we need only address two items: '(1) [whether] the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1); and (2) [whether] there is competent, credible evidence supporting the trial court's conclusion that it was in the children's best interest to designate [the other parent] as residential parent.'" *Brammer*, 2013-Ohio-2843, at ¶ 47 (3d Dist.), quoting *Heiser v. Heiser*, 2007-Ohio-5487, ¶ 27 (3d Dist.).

**{¶46}** However, we are unable to review whether there is competent, credible evidence supporting the trial court's determination that it is in J.S.'s best interest for Starr to be designated his residential parent and legal custodian. Critically, Statler-Houchin failed to timely file a transcript for the trial court's consideration in response to her objections to the magistrate's decision. Consequently, this court is precluded from considering whether the trial court's magistrate's best-interest findings are supported by a substantial amount of competent, credible evidence. *Accord In re K.R.J.C.*, 2024-Ohio-632, ¶ 26 (11th

Dist.) (concluding that the "failure to timely procure the transcript for the trial court's consideration in ruling on objections precludes [the appellate] court from considering whether the magistrate's factual findings were supported"). *See also Hewitt v. Hewitt*, 2009-Ohio-6525, ¶ 47 (3d Dist.) (affirming that "any error with regards to the sufficiency of the magistrate's findings was technically waived" since "a transcript of the proceeding was not provided to the trial court"). "Thus, although the record contains a transcript of the evidentiary hearing before the magistrate, the transcript was not filed until after the objections were ruled upon and cannot be considered on appeal." *In re K.R.J.C.* at ¶ 26, citing *In re D.S.R.*, 2012-Ohio-5823, ¶ 17 (11th Dist.).

{¶47} As a result, Statler-Houchin's third assignment of error is overruled.

{¶48} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**